Mary C. McLeod **DOWNING**, Administratrix of the Estate of Lonnie F. Downing, Deceased, Intestate, Plaintiff,

v.

Lena S. **ULMER**, Administratrix of the Estate of Katherine E. Peeples, Deceased, Intestate, Defendant.

Civ. A. No. AC–1800.

United States District Court
D. South Carolina,
Aiken Division.

May 5, 1966.

Billy R. Craig, Floyd & Craig, Hartsville, S. C., for plaintiff.

Julian B. Salley, Jr., Henderson, Salley, Cushman & Summerall, Aiken, S. C., for defendant.

Robert L. Scott, Charlotte, N. C., for petitioners Queen City Coach Co. and Michigan Mut. Liability Ins. Co.

SIMONS, District Judge.

This action was originally commenced by plaintiff, Mrs. Mary C. McLeod Downing, as Administratrix of the Estate of her husband, Lonnie F. Downing, deceased, against the defendant for the wrongful death of her intestate husband, pursuant to the provisions of Section 10–1951 of the 1962 South Carolina Code of Laws, based upon the actionable negligence of defendant's intestate in the operation of her automobile, which resulted in the head-on collision between her said automobile and the Queen City Coach Company bus driven by plaintiff's intestate. The case was tried before me without a jury on March 30, 1966 at Aiken, South Carolina.

During the course of the trial, upon motion of plaintiff and without objection from defendant, plaintiff by leave of court was permitted to amend her complaint so as to include therein a second cause of action for conscious pain and suffering under the Survivorship Statute, Section 10–209 of the 1962 South Carolina Code of Laws. Defendant's answer to the wrongful death action was amended so as to incorporate therein the same answer as to the survivorship action.

From the testimony of the witnesses presented by plaintiff and stipulations submitted to the court by the defendant,[1] I make the following findings of fact and conclusions of law.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, Mrs. Mary C. McLeod Downing, is the duly appointed Administratrix of the Estate of Lonnie F. Downing, deceased, and is a citizen of the State of North Carolina. Plaintiff's intestate left surviving him as beneficiaries under the wrongful death action, pursuant to Section 10–1952 of the 1962 South Carolina Code of Laws, his widow, the plaintiff herein, and their two sons, Bruce Wayne Downing, aged 19, and William Fred Downing, aged 26; further, that said widow and two sons also constitute his heirs-at-law and next of kin. Lonnie F. Downing, at the time of the fatal collision, was in good health, a devoted husband and father, a good provider who was earning annually between $6500 and $7500. At the time of his death he was 53 years of age with a life expectancy of 21.25 years, according to the South Carolina Mortuary Table, Section 26–12, as amended, of the 1962 South Carolina Code of Laws.

The defendant, Lena S. Ulmer, is the duly appointed Administratrix of the Estate of Katherine E. Peeples, and is a

---

1. Stipulation by Defendant filed March 30, 1966:

I. That the issues to be determined by the Court are as follows: (a) Whether the collision in question resulted from the negligence of the plaintiff's intestate or the defendant's intestate, or both; (b) the amount of the damages sustained if it should be found that the collision resulted solely from the negligence of the defendant's deceased intestate.

II. That on or about September 14, 1964, a collision occurred between a bus driven by Lonnie F. Downing and an automobile driven by Katherine E. Peeples on a public highway in Aiken County, South Carolina, resulting in the death of both of said drivers. That the collision was substantially a "head on" collision. That Mary C. McLeod Downing has been duly appointed as Administratrix of the Estate of Lonnie F. Downing, deceased.

III. That the defendant does not expect to call any witnesses at the trial of the cause nor to offer in evidence any exhibits.

IV. That no real negotiations have been entered into between the attorneys for the parties in view of the fact that the insurance carrier for Katherine Peeples has filed an interpleader action in this Court naming all of the numerous possible claimants against the Estate of Mrs. Peeples arising out of this collision as defendants and depositing with this Court its check for the full amount of the personal injury coverage under said policy less the amounts paid in settlement to several of the claimants and the fact that it would appear that the full value of the unpaid claims exceeds the remaining funds available to pay such claims, and it does not appear that by negotiation the remaining claims can be settled for the portion of the insurance coverage remaining available.

citizen and resident of the State of South Carolina. This court has jurisdiction of this cause by virtue of diversity of citizenship of the parties and the amount in controversy pursuant to Title 28, U.S.C.A. Section 1332(a).

On September 14, 1964 at about 5:00 p. m., plaintiff's intestate, while in the course of his employment and duties with Queen City Coach Company, was driving a bus in a westerly direction along South Carolina Highway No. 28 in Aiken County, near the town of New Ellenton, in a careful, cautious and lawful manner, and in the proper lane of traffic. At that time and place defendant's intestate, Katherine E. Peeples, was driving a 1956 Mercury automobile in an easterly direction on said Highway No. 28 at a highly dangerous and unlawful rate of speed in a negligent, reckless, and wilful manner. As defendant's intestate driving the Mercury automobile as aforesaid approached the bus driven by plaintiff's intestate, the Mercury automobile which she was driving at an estimated speed of 70 to 80 miles per hour traveled to its left across the center line of said highway directly into the path of the oncoming bus. Plaintiff's intestate, being faced with a sudden emergency, slowed the bus and swerved to his left to attempt to avoid head-on collision with the oncoming Mercury. At about that time the Mercury swerved back to the right and the bus was swerved back to its right and a headon collision occurred between the two vehicles near the center line of said highway, resulting in mortal injuries to both defendant's intestate and plaintiff's intestate, the latter dying about four days later. Plaintiff's intestate received severe injuries about his entire body, he was almost scalped and caused to suffer much conscious pain, lingering on for several days, and dying as a result of his said injuries at about 7:00 a. m. on September 18, 1964. Plaintiff's intestate, in his operation of the bus under the circumstances existing immediately prior to the fatal collision, was operating the same in a careful and cautious manner and used such care and diligence as a person of ordinary reason and prudence would have exercised under the same or similar circumstances.

In the collision several passengers in the bus were seriously injured and the action of the insurance carrier for defendant's intestate in depositing the full amount of its personal injury coverage under its liability policy over the Peeples automobile is clear indication that it concluded after its investigation that the facts in this case placed the full liability and responsibility for the fatal accident upon its insured, defendant's intestate, Katherine E. Peeples. It is also significant to note that defendant offered no witnesses and defense counsel participated in very limited cross examination of plaintiff's witnesses.

■ Under the evidence before the court in this case I find and conclude that the actionable negligence, recklessness, wilfulness and wantonness of defendant's intestate in the operation of her Mercury automobile upon the occasion in question was the sole proximate cause of the head-on collision, and the personal injuries and resulting death to plaintiff's intestate, and to the injuries and damages which have been caused as a result thereof to his wife and two sons.

I further find and conclude that plaintiff's intestate was not guilty of any negligence, recklessness, wilfulness, or wantonness which contributed in any degree to the fatal collision.

The evidence is very clear and uncontradicted that as a result of the wrongful death of plaintiff's intestate, his widow and two sons have suffered and will continue to suffer for the rest of their natural lives mental anguish, grief and sorrow resulting from his wrongful death. They have lost the love and affection of a devoted father and husband, and have been deprived of his advice, judgment, companionship and knowledge, and have suffered and will continue to suffer pecuniary loss for many years to come. I further find that the funeral expenses for plaintiff's in-

testate were paid by plaintiff in the amount of $1,421.22.

I further find and conclude that plaintiff's intestate lived and was conscious for about 4 days after receiving the fatal injuries in subject collision. The plaintiff, who was with him most of that time while he lingered in the hospital, testified as to the severe pain which he endured, especially because he was unable to receive proper medication due to the elevated condition of his blood pressure.

■■ I find and conclude that plaintiff is entitled to judgments against the defendant as follows: (1) Under her first cause of action for wrongful death the sum of Forty Thousand Dollars ($40,000.00) actual damages; and (2) under her second cause of action for conscious pain and suffering the sum of Twenty-five Hundred Dollars ($2500.00) actual damages.

And it is so ordered. Let judgments be entered accordingly.

■ The Queen City Coach Company and its Workmen's Compensation Insurance Carrier, Michigan Mutual Liability Insurance Company, filed with this court on October 2, 1965, a "Notice of Lien and Certificate of Interest in Recovery" in the total amount of Thirteen Thousand, Two Hundred Sixty-five and 25/100 Dollars ($13,265.25) pursuant to the provisions of North Carolina Workmen's Compensation Act and N.C.G.S. § 97–10.2, which provides in part as follows:

> In any proceeding against or settlement with the third party, every party to the claim for compensation shall have a lien * * * upon any payment made by the third party by reason of such injury or death, whether paid in settlement, in satisfaction of judgment, as consideration for covenant not to sue, or otherwise and such lien may be enforced against any person receiving such funds.

Said petitioners respectfully ask the court to protect their interests by appropriate order upon the entry of any judgment herein. The court has been advised that plaintiff does not contest or resist petitioners' request that their subrogation claim be protected by order of this court. It is, therefore,

■ ORDERED that any payment made to plaintiff by the Clerk of this Court from the funds deposited with him by defendant's insurance carrier, as a result of the judgments hereinabove ordered entered in favor of plaintiff be made by disbursement jointly to plaintiff, The Queen City Coach Company, and Michigan Mutual Liability Insurance Company.[2]

---

2. Attention is invited to the fact that the foregoing relief has been ordered by this court in favor of petitioner, Queen City Coach Company, and its compensation carrier Michigan Mutual Liability Insurance Company because the court was advised that plaintiff did not contest or oppose the granting of such relief to them. Since the insurance contract was entered into in North Carolina and payments made thereunder in that state, petitioner's rights would be determined by the laws of North Carolina. Under the law of that state where compensation is paid to an injured employee or the dependents of a deceased employee, the one making the payment is subrogated to, and has a lien against any payments made by a third party tort feasor whose negligence proximately caused the injury or death to the extent of such payments. (See N.C.G.S. § 97–10.2, supra). Because of the provisions of North Carolina law petitioners had such an interest in the subject matter of the litigation that they would gain or lose by the direct legal operation of any judgment entered in this case. Therefore, under the provisions of Rule 24(a) of the Federal Rules of Civil Procedure they would have been entitled to intervene as a matter of right as a party-plaintiff, had they made timely application to the court. Regardless of the manner in which such subrogation right or lien may be protected under North Carolina's procedure, the mode, time and manner in which employer and compensation insurer might assert in actions pending in this court its substantive right of subrogation against the defendant as a third party tort feasor is a procedural matter to be determined by the Federal Rules of Civil Procedure and not by the local law of North Carolina. Kelley v. Summers, 210 F.2d 665 (10th Cir. 1954). Inasmuch as no timely

motion to intervene was made on behalf of petitioners in this case, this court would have felt no obligation nor inclination to take any affirmative action to pro-

tect petitioners' rights had such action been opposed by plaintiff.