**Curtis McDONALD, Plaintiff-Appellee,**

v.

**E. J. LAVINO COMPANY, Defendant-Appellee,**

v.

**UNITED STATES FIDELITY & GUAR-ANTY COMPANY, Workmen's Compensation Carrier, Subrogee and Movant to Intervene-Appellant.**

**No. 28402.**

United States Court of Appeals, Fifth Circuit.

July 31, 1970.

Rehearing Denied Aug. 20, 1970.

Lawrence W. Rabb, Rabb & Corrigan, Meridian, Miss., for appellant.

Robert P. Upchurch, Livingston, Ala., Hugh W. Roberts, Jr., Sam M. Phelps, Phelps & Owens, Tuscaloosa, Ala., for appellee.

Before COLEMAN, GOLDBERG and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge.

This appeal is the result of a drama played out in an Alabama courtroom against the backdrop of a Mississippi statute. The dramatis personae included an injured employee, his employer's workmen's compensation carrier, a third-party tortfeasor, and lawyers who were never able to reach agreement on how to settle the compensation carrier's subrogation interest. The issue now before us arose when the trial court denied the compensation carrier's motion to intervene filed one day after judgment. The carrier now appeals, challenging the court's conclusion that the motion was not "timely." Despite the fact that the trial court gave this issue careful and extensive consideration, our reading of Rule 24, Federal Rules of Civil Procedure, leads us to the conclusion that the court abused its discretion in denying the intervention. Accordingly, we reverse and remand.

The history of this litigation began on June 24, 1966. On that date Curtis McDonald, an employee of Mid-South Steel Erectors, Inc. (Mid-South), of Meridian, Mississippi, sustained personal injuries while working for his employer on the premises of E. J. Lavino Company, Inc. (Lavino), in York, Alabama. As a result of this accident Mid-South's workmen's compensation carrier, United States Fidelity & Guaranty Company (USF&G), paid McDonald a total of $8,772.19 in benefits.[1]

Following the accident McDonald employed counsel to pursue a tort recovery against Lavino. Suit was filed in an Alabama state court on June 20, 1967, and the case was subsequently removed to federal court on motion of Lavino. McDonald's counsel informed USF&G of the filing of the lawsuit because USF&G, having paid $8,772.19 to McDonald in workmen's compensation benefits, had a subrogation interest in any recovery McDonald might obtain from Lavino.

The record reveals that additional correspondence between McDonald's attor-

---

1. An affidavit filed on behalf of USF&G in the court below provides the following breakdown of USF&G's payments to McDonald:

"United States Fidelity & Guaranty Company paid weekly benefits of $35.00 per week for 65 weeks and 5 days, for a total of $2265.00 as temporary total benefits. Then 21⅔ths weeks of partial disability payments of $745.00. Then on March 5, 1968, it paid a lump sum compromise settlement of $3430.00 to Mr. McDonald. During the period, it also paid $1330.35 hospital expense and $1001.84 medical expense for a total payment of $8772.19."

neys and counsel for USF&G took place from the time suit was filed until the time of trial. The details of the communications between the attorneys are unimportant for our purposes, but two basic facts deserve mention: McDonald's lawyers never expressly requested that USF&G intervene, and they never expressly requested that USF&G not intervene. Unencumbered by any specific request, counsel for USF&G apparently concluded that intervention was not necessary to protect USF&G's subrogation interest.

The case was set for trial on May 5, 1969. On that date attorneys for McDonald and Lavino informed the court that they had agreed upon a settlement in the amount of $19,100.00. This settlement was considered and approved by the court. The jury was instructed to enter a verdict for McDonald in the amount of the settlement, and after verdict judgment was entered accordingly.

Lawrence W. Rabb, USF&G's attorney, was present in the courtroom during the proceedings on May 5, but he took no part in those proceedings, and the court was not formally notified of the subrogation claim of USF&G. Later the same day, however, after conferring with counsel for McDonald, Rabb apparently came to the conclusion that the subrogation interest of USF&G would not be protected unless USF&G intervened in McDonald's lawsuit. Consequently early the next morning he filed a motion to intervene. The court took his motion under advisement and asked him to file affidavits in support of the motion. In accordance with the court's request, two affidavits were filed on May 16, one signed by Rabb and the other signed by Troy E. Barnes, a claim adjuster employed in the Meridian, Mississippi, office of USF&G.

Not satisfied with the affidavits, the court held an extended hearing on July 18, 1969, to determine whether to grant the motion to intervene. At the conclusion of the hearing the court announced:

"I will enter the proper findings of fact and conclusions of law during the latter part of next week, and will hold that the motion to intervene was not a timely motion. That has nothing to do [with] whether or not there were or were not subrogation rights between U.S.F.&G. and the plaintiff, but simply that the motion to intervene wasn't timely filed, and will be dismissed."

On July 29, 1969, the court filed its memorandum opinion. We quote the opinion in full:

"This cause, coming on to be heard, was submitted for the judgment of the court on the motion filed in behalf of United States Fidelity & Guaranty Company for leave to intervene as a party plaintiff herein, the affidavits of Troy Barnes and Lawrence W. Rabb in support thereof, the oral testimony adduced in open court on the 18th day of July, 1969, and the oral arguments of counsel.

"A chronology of significant events occurring in the somewhat tortuous course of this case through the courts will place the issue sub judice in proper perspective. Curtis McDonald, an employee of Mid-South Steel Erectors, Inc., of Meridian, Mississippi, sustained severe personal injuries on June 24, 1966, when he fell from a ladder on the premises of E. J. Lavino Company, Inc. in York, Alabama, while engaged in the performance of duties for his employer. United States Fidelity and Guaranty Company (U.S.F. & G.), Mid-South's compensation carrier, paid a total sum of $8,772.19 in compensation benefits and hospital and medical expenses, as evidenced by his final receipt, dated March 1, 1968.

"Mr. James G. McIntyre, of Jackson, Mississippi, who represented McDonald in his compensation claims, referred his claim against Lavino as a third-party tort feasor to Mr. Robert T. Upchurch, a practicing attorney in Livingston, Alabama. As early as March 21, 1967, U. S. F. & G. had notice of the potential liability of Lavino and corresponded with it with reference thereto.

"On June 20, 1967, Mr. Upchurch filed a complaint in the Circuit Court of Sumter County, Alabama, naming as defendants E. J. Lavino and Company, Inc., International Minerals and Chemicals, Inc. and two individuals, at least one of whom was a resident citizen of the State of Mississippi.

"On June 11, 1968, such action was removed to this court, after service of process, on the petition of Lavino. There ensued a number of motions and conferences with the court culminating in the elimination of the individuals as parties defendant and a summary judgment in favor of defendant, International Minerals and Chemicals Corporation.

"From conferences with the attorneys involved, the court gained the impression that the issue of liability was clouded with such doubt as virtually to preclude the possibility of settlement. In cooperation with Professor Vastine Stabler of the School of Law of the University of Alabama a case was to be selected for pretrial conference at the Law School and thereafter for trial to a jury in its courtroom. This case was selected for such purpose and set for trial as the first case on Monday, May 5, 1969, commencing the second week of the trial docket.

"At no time, either at the pretrial conference held on April 8, 1969, or on the morning of May 5, 1969, or at any intervening time was the claim of U. S. F. & G. called to the attention of the court.

"At eight o'clock, a.m., on May 5, 1969, Mr. Sam M. Phelps, representing McDonald in this court and Mr. Hugh Roberts, representing Lavino, advised me that on the preceding Saturday they had agreed upon a settlement of this case in the amount of $19,100.00. This agreement was thoroughly considered and approved by the court. When the jury reported and a trial jury was empaneled, the court advised the jury of the compromise agreed upon and of its approval thereof, and instructed the jury that by consent of the attorneys of record for the respective parties the verdict in such amount might be returned.

"Immediately after the receipt of such verdict the court proceeded to determine whether in the next case on the docket there existed challenges for cause as to eighteen members of the jury, and, being satisfied that there were none, instructed such jurors to proceed forthwith to the Law School. Immediately prior to my departure for the Law School Mr. Phelps brought Mr. Rabb into my chambers and introduced him to me. I recognized Mr. Rabb as having been a silent observer in the courtroom at the time the consent verdict was returned.

"Early the following morning Mr. Phelps and Mr. Rabb returned to my chambers before court opened, at which time Mr. Rabb presented me with a motion to intervene in behalf of U.S.F.&G. After some discussion, this motion was taken under advisement and Mr. Rabb was requested to file affidavits with respect to the timeliness of such motion.

"Being concerned with the possibility that, as a matter of trial strategy, U.S. F.&G. had been induced or persuaded not to intervene before trial by counsel representing the plaintiff and dissatisfied with the supporting affidavits, the court set this motion down for oral testimony to supplement such affidavits on July 18, 1969, and directed all attorneys who had appeared of record for McDonald to be present.

"The legal issue is a narrow one. It was conceded that the substantive rights of U.S.F.&G. are governed by the law of Mississippi where compensation was paid. Clearly the right to intervene in federal actions is governed by Rule 24, Federal Rules of Civil Procedure and not by state law. Wright on Federal Courts, Section 75 at page 283. Furthermore, all applications to intervene, whether as of right or permissively, are required to be 'timely.' To this extent the court has discretion in all cases of intervention, because it must determine the timeliness of the application.

Wright on Federal Courts, Section 75 at page 285; 2 Barron & Holtzoff (Wright ed.), Section 594 and cases therein cited.

"On the basis of the oral testimony elicited from both Mr. Troy E. Barnes and Mr. James G. McIntyre the court does not credit the statement contained in the May 9, 1969 affidavit of Mr. Barnes that 'Prior to May 5, 1969, in all the discussions I had with Mr. McIntyre, he represented to me that he preferred to pursue the third party claim in the name of Mr. Curtis McDonald as plaintiff, and desired that United States Fidelity & Guaranty Company not enter the case as an intervening plaintiff. He assured me that the carrier's subrogation rights would be protected in any recovery the plaintiff was able to obtain from the third party tortfeasor.'

"The court attaches significance to facts developed on July 18. In early April, 1969, Mr. Troy Barnes had been explicitly advised by his superior in the Meridian office of U.S.F.&G. to intervene in this action. In April Mr. Lawrence W. Rabb was advised by Mr. Walter J. Gex, III of the Jackson, Mississippi firm of Satterfield, Shell, Williams & Buford, attorneys of record for McDonald, that he would have to use his own judgment as to whether to inter-vene in this action. During the week before trial, because of the tenuous nature of Lavino's liability and the expense incident to trial, in a telephone conversation with Mr. Lawrence Rabb, Sam Phelps requested that U.S.F.&G. agree to share such expense and was advised by Mr. Rabb that it would not do so.

"From the foregoing circumstances, the court concludes that by failing and refusing to intervene before final judgment, U.S.F.&G. took a calculated risk and that it preferred a free ride rather than the risk of bearing its share of the cost of litigation. In short, the court is convinced that an exercise of sound discretion should lead to a denial of such motion to intervene."

USF&G now appeals from the denial on its motion to intervene. In deciding the appeal we initially note our agreement with the trial court's conclusion that the applicable substantive law determinative of USF&G's subrogation rights is the Mississippi law under which compensation was paid. The specific Mississippi statute which USF&G invokes is section 30 of the Mississippi Workmen's Compensation Act, Mississippi Code § 6998–36.[2] Section 6998–36

2. Section 6998–36 provides:

*Compensation for injuries where third parties are liable.*—The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue any other party at law for such injury or death, but the employer or his insurer shall be entitled to reasonable notice and opportunity to join in any such action or may intervene therein. If such employer or insurer join in such action they shall be entitled to repayment of the amount paid by them as compensation and medical expenses from the net proceeds of such action (after deducting the reasonable costs of collection) as hereinafter provided.

The commencement of an action by an employee or his dependents (or legal representative) against a third party for damages by reason of the injury, or the adjustment of any such claim, shall not affect the right of the injured employee or his dependents (or legal representative) to recover compensation, but any amount recovered by the injured employee or his dependents (or legal representative) from a third party shall be applied as follows: Reasonable costs of collection as approved and allowed by the court in which such action is pending, or by the commission of this state in case of settlement without suit, shall be deducted; the remainder, or so much thereof as is necessary, shall be used to discharge the legal liability of the employer or insurer, and any excess shall belong to the injured employee or his dependents. The employee or his dependents bringing suit against the third party must notify the employer or carrier within fifteen days of the filing of such suit.

An employer or compensation insurer who shall have paid compensation benefits under this act for the injury or

deals in part with the right of an injured employee who has received workmen's compensation benefits to bring suit against a third party for a recovery in tort. In pertinent part the statute provides that

"any amount recovered by the injured employee * * * from a third party shall be applied as follows: Reasonable costs of collection as approved and allowed by the court in which such action is pending * * * shall be deducted; the remainder, or so much thereof as is necessary, shall be used to discharge the legal liability of the employer or insurer, and any excess shall belong to the injured employee * * *."

death of the employee shall have the right to maintain an action at law against any other party responsible for such injury or death, and in the name of such injured employee or his beneficiaries, or in the name of such employer or insurer, or any or all of them. If reasonable notice and opportunity to be represented in such action by counsel shall have been given to the compensation beneficiary, all claims of such compensation beneficiary shall be determined in such action, as well as the claim of the employer or insurer. If recovery shall be had against such other party, by suit or otherwise, the compensation beneficiary shall be entitled to any amount recovered over and above the amount that the employer and insurer shall have paid or are liable for in compensation or other benefits, after deducting the reasonable costs of collection.

In case of settlement of any action before the trial thereof, such settlement shall be subject to the approval of the court wherein such action is pending, and settlement before an action is brought shall be subject to the approval of the commission. Distribution of the portion belonging to the dependents shall be made among such dependents in the manner provided for in this act.

In case of liability of the employer or insurer to make payment to the state treasury under the second injury fund provisions, if the injury or death creates a legal liability against a third party, the employer or insurer shall have a right of action against such third party for reimbursement of any sum so paid into the state treasury, which

It is undisputed that USF&G is entitled, as a matter of substantive right, to receive satisfaction of its subrogation claim pursuant to the Mississippi statute. What is disputed is the *procedure* by which USF&G presented its claim to the court below.

■ As the trial court correctly held, the procedural question of the proper "mode, time and manner" [3] for presentation of USF&G's claim in a proceeding in federal court is a question which must be resolved by looking to the Federal Rules of Civil Procedure rather than to state law. The Federal Rule governing intervention is Rule 24,[4]

right may be enforced in the action heretofore provided for or by an independent action.

3. Downing v. Ulmer, D.S.C.1966, 253 F. Supp. 694, 698 n. 2.

4. Rule 24 provides:
   *(a) Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

   *(b) Permissive Intervention.* Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly

which provides for both intervention of right, Rule 24(a), and permissive intervention, Rule 24(b). Since USF&G's purpose in moving to intervene was to protect its subrogation interest as a compensation carrier under the Mississippi statute, it is clear that the proposed intervention was cognizable as intervention of right under Rule 24(a)(2). Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 5 Cir. 1970, 420 F.2d 1103, 1114–1115. The only disputed question is whether the motion to intervene, filed one day after judgment, was "timely" within the meaning of Rule 24, which provides for intervention "upon timely application." [5]

█ Since the rule itself is silent concerning what constitutes a timely application, it has long been held that the determination of timeliness is a matter committed to the sound discretion of the trial court. Smith Petroleum Service, Inc. v. Monsanto Chemical Co., supra, 420 F.2d at 1115; Lumbermens Mutual Casualty Co. v. Rhodes, 10 Cir. 1968, 403 F.2d 2, 5, cert. denied, 394 U.S. 965, 89 S.Ct. 1319, 22 L.Ed.2d 567; Washington Gas Light Co. v. Baker, 1951, 90 U.S.App.D.C. 98, 195 F.2d 29, 32; Simms v. Andrews, 10 Cir. 1941, 118 F.2d 803, 806. The decision of a trial court on the question of timeliness "is subject to reversal where discretion has been abused." 3B Moore's Federal

Practice ¶ 24.13[1], at p. 24–525 (2d ed. 1969).

In contending that the motion of USF&G was not timely, McDonald relies on the well established general principle that "[i]ntervention after judgment is unusual and not often granted." *Id.* at p. 24–526. We are certainly not unmindful of this principle or of the cogent policy reasons which underlie it, but we are not persuaded that it answers the question now before us. We consider it significant that USF&G was not attempting to reopen or relitigate any issue which had previously been determined. On the contrary, USF&G was merely attempting to protect its subrogation interest in a fund which had not yet been distributed.[6]

Courts have previously recognized the special nature of a motion to intervene for the limited purpose of asserting a subrogation interest in a fund paid into the registry of the court. In The Etna, 3 Cir. 1943, 138 F.2d 37, a longshoreman was injured and received compensation and medical expenses from his employer pursuant to the Longshoremen's and Harbor Workers' Compensation Act. He subsequently brought suit against a third party and recovered. The trial court allowed the employer to intervene after judgment to establish its subrogation interest in the fund, and the Third Circuit affirmed. In its opinion, 138 F.

delay or prejudice the adjudication of the rights of the original parties.

(c) *Procedure.* A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute of the United States gives a right to intervene. When the constitutionality of an act of Congress affecting the public interest is drawn in question in any action to which the United States or an officer, agency, or employee thereof is not a party, the court shall notify the Attorney General of the United States as provided in Title 28, U.S.C., § 2403.

5. For a general discussion of the timeliness requirement see 2 Barron & Holtzoff, Federal Practice and Procedure § 594 (Wright ed. 1961); 3B Moore's Federal Practice ¶ 24.13[1] (2d ed. 1969); Note, The Requirement of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure, 37 Va.L.Rev. 863 (1951).

6. The fund, in fact, has never been distributed. To protect itself against such distribution, on July 21, 1969, USF&G filed with a judge of this court a motion for supersedeas. As a result of the granting of this motion, the sum of $19,100.00 paid into the court by Lavino to discharge the judgment has remained in the depository of the district court pending the disposition of this appeal.

2d at 42, the court quoted with approval the following language from Mason v. Marine Insurance Co., 6 Cir. 1901, 110 F. 452, 455:

"When the money was paid into court, all the purposes of the decree, so far as the parties to the suit were concerned, were accomplished. The insurance companies had not been parties to the suit, and it was entirely competent for them, at any time before the final distribution of the fund was made, to intervene for the purpose of presenting their claim to an interest in the fund, and for its establishment by the decree of the court."

In Lalic v. Chicago, Burlington & Quincy Railroad Co., N.D.Ill.1967, 263 F.Supp. 987, it was held that a motion to intervene to assert a subrogation interest, filed after the parties to the litigation had agreed on a settlement, was timely within the meaning of Rule 24. "Due to the nature of the requested intervention" the court found that the timing of the petition to intervene did not prejudice any party to the litigation. 263 F.Supp. at 988. See also Monroe v. Pape, N.D.Ill.1963, 221 F.Supp. 635, in which the court stated:

"Even though the petition [to intervene to assert a subrogation interest] was filed after the verdicts had been entered, under the circumstances of this case, and due to the nature of the requested intervention, the petition is timely within the meaning of that term as used in Rule 24. No harm, prejudice, or burden will result to any of the parties because the petition is filed on January 11, 1963, rather than on an earlier date. Indeed, the merits of the petition would not have been considered until the verdicts had been rendered anyway, for if the verdicts had been favorable to the defendants, there would have been no need to consider the petitioner's claim." 221 F. Supp. at 649 (footnote omitted).

In Legler v. Douglas, 1960, 26 Ill.App. 2d 365, 167 N.E.2d 813, an Illinois court rendered an opinion which is not without relevance to the present case. The pertinent portion of the *Legler* opinion involved section 26.1 of the Illinois Civil Practice Act, which is patterned after Federal Rule 24 and includes the requirement that intervention be "upon timely application." In the context of section 26.1 the court stated:

"The employer's right of intervention [as a subrogee under the Illinois Workmen's Compensation Act] is limited to his right to protect his lien in all orders of court after hearing and judgment. It would seem only logical, and we so hold, that the employer may intervene at any stage up to the satisfaction of the judgment.

"We find such an interpretation to be wholly consistent with Section 26.1 of the Civil Practice Act, Chap. 110, Sect. 26.1, Ill.Rev.Stat.1957, requiring that application for intervention be timely." 167 N.E.2d at 819.

■ In the present case, since USF&G sought to intervene for the limited purpose of protecting its subrogation interest in a fund which had not yet been distributed, we cannot conclude that the motion to intervene was untimely merely because it came a few hours after the entry of judgment. It is true, as we have noted, that an attempt to intervene after final judgment is ordinarily looked upon with a jaundiced eye. The rationale which seems to underlie this general principle, however, is the assumption that allowing intervention after judgment will either (1) prejudice the rights of the existing parties to the litigation or (2) substantially interfere with the orderly processes of the court. In the present case neither of these results would have ensued if the intervention had been allowed.

■ The timing of USF&G's motion to intervene could not have interfered substantially with the orderly processes of the court, for USF&G did not seek to reopen or relitigate any issue which had previously been determined. At the most, the timing of the intervention may have caused the trial court some minor

inconvenience. It is clear, however, that mere inconvenience is not in itself a sufficient reason to reject as untimely a motion to intervene as of right. See, e. g., 3B Moore's Federal Practice ¶ 24.-13[1], at p. 24–522 (2d ed. 1969) (" * * * since something more than trial convenience is * * * involved [in intervention as of right] an application to intervene under Rule 24(a) may well be granted at a time in the suit when it would be wise to deny permissive intervention."); 2 Barron & Holtzoff, Federal Practice and Procedure § 594, at 366 (Wright ed. 1969) ("Since in situations where intervention is as of right, the would-be intervenor may be seriously harmed if he is not permitted to intervene, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive."); Wright, Federal Courts § 75, at 328 (2d ed. 1970) (" * * * courts should be extremely reluctant to dismiss such applications as untimely."); Cameron v. President and Fellows of Harvard College, 1 Cir. 1946, 157 F.2d 993, 996; Walpert v. Bart, D. Md.1968, 44 F.R.D. 359, 360–361.

■■ The most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene. Diaz v. Southern Drilling Corp., 5 Cir. 1970, 427 F.2d 1118, 1125; Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 5 Cir. 1970, 420 F. 2d 1103, 1115; 2 Barron & Holtzoff, Federal Practice and Procedure § 594, at 366 (Wright ed. 1961). In fact, this may well be the *only* significant consideration when the proposed intervenor seeks intervention of right. As one commentator has noted, "the courts are in general agreement that an intervention of right under Rule 24(a) must be granted unless the petition to intervene would work a hardship on one of the original parties." Note, The Requirement of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure, 37 Va. L.Rev. 863, 867 (1951). In the present case, since USF&G's proposed intervention was for the limited purpose of staking a claim to a portion of the proceeds rather than an attempt to litigate any pre-judgment issue, we are utterly unable to perceive any way in which any party could have been prejudiced by the timing of the motion. In other words, we cannot see how McDonald or Lavino could possibly have been prejudiced by the fact that USF&G filed its motion to intervene on May 6, 1969, rather than on an earlier date.[7]

7. There is one conceivable argument concerning possible prejudice to McDonald as a result of the timing of USF&G's intervention. This argument is the "free ride" theory, i. e., that USF&G deliberately sat on the sidelines waiting for McDonald to expend the cost of winning the lawsuit and then came on the scene after judgment to reap the fruits of McDonald's victory. The trial court relied in part on this theory in its memorandum opinion, stating that "the court concludes that by failing and refusing to intervene before final judgment, U. S. F. & G. took a calculated risk and that it preferred a free ride rather than the risk of bearing its share of the cost of litigation."

We cannot directly disagree with the trial court's conclusion concerning USF&G's motives, for the record is at best ambivalent on the question. We are not concerned about the "free ride" argument, however, because the trial judge himself suggested a solution which would eliminate the possibility of prejudice to McDonald. Early in the hearing on July 18, 1969, Judge Lynne stated:

"One other matter occurs to me. The subrogation claim has been established to my satisfaction by affidavits. I don't think there could be any dispute about the amount of the claim. That amount is forty-six per cent of the amount of the judgment recovered. If I do permit intervention, I am going to require the subrogee to pay forty-six per cent of the attorneys' fee, and the plaintiff fifty-four per cent."

We are not aware of any reason why this solution would not be proper. Moreover, such a solution would be an appropriate response to the "free ride" problem, for it would prevent the *problem* instead of preventing the *intervention.*

"Timeliness" is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice. The rule has its permissive aspects, and while we do not dislodge nor denigrate the trial court's discretion in matters of intervention, we must view its exercise in the liberal atmosphere of the Rules of Civil Procedure, which are to be construed "to secure the just, speedy, and inexpensive determination of every action." Rule 1, Fed.R.Civ.P. In the present case McDonald seems to assume that the requirement of timeliness is a tool of retribution which can be used to punish a would-be intervenor for allowing time to pass before moving to intervene. We cannot agree with such a view. We think it is correct to say that since "the privilege of intervention stems from a desire to protect the rights of unrepresented third parties, it becomes apparent that the timely application requirement under Rule 24 was not intended to punish an intervenor for not acting more promptly but rather was designed to insure that the original parties should not be prejudiced by the intervener's failure to apply sooner." Note, The Requirement of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure, 37 Va.L.Rev. 863, 867 (1951). Accordingly, it has been the traditional attitude of the federal courts to allow intervention "where no one would be hurt and greater justice would be attained." *Id.* at 868.

This is precisely the situation now before us. Stripped to its bare essentials the factual situation presented by the present case is this: A motion to intervene as of right for the purpose of asserting an interest in the $19,100.00 fund is made one day *after* judgment but *before* the fund has been distributed. It is clear that the proposed intervenor has a valid claim to a portion of the fund and that its intervention will not prejudice any party nor interfere with the orderly processes of the court. In short, no one will be harmed in any way if the intervention is allowed. At the same time, denial of the motion to intervene will harm USF&G by frustrating its efforts to satisfy its subrogation interest. In this situation we think it is an abuse of discretion to deny a motion for intervention on the ground that the motion has not been timely filed.

It goes without saying, of course, that a reversal for "abuse of discretion" does not imply that the district judge has been guilty of some egregious blunder. See Smith-Weik Machinery Corp. v. Murdock Machine and Engineering Co., 5 Cir. 1970, 423 F.2d 842 [No. 27950, Mar. 30, 1970]. This is especially true in this case, for the record makes it abundantly clear that the district judge studied the issue of intervention with great care and patience. Thus we would not want it thought that our decision implies any criticism of the district judge's handling of this case. Our reversal simply means that this court, after studying the entire record in the light of all the relevant considerations, concludes that the reasons militating in favor of granting the motion to intervene substantially outweighed the reasons militating against it. In the unusual situation presented by this case, even though the motion to intervene came after final judgment we can detect no valid reason to deny intervention. With little strain on the court's time and no prejudice to the litigants, the controversy can be stilled and justice completely done.

The judgment of the district court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.