778 So.2d 136 (2000)
MISSISSIPPI FOOD AND FUEL WORKERS' COMPENSATION TRUST, Appellant,
v.
Bobbi TACKETT, as the Wrongful Death Beneficiary of Tony Murphree, Deceased, and as the Administratrix of the Estate of Tony J. Murphree, Appellee.
No. 1999-CA-00028-COA.
Court of Appeals of Mississippi.
March 28, 2000.
Rehearing Denied July 18, 2000.
*137 Jeff Skelton, Attorney for Appellant.
Grady F. Tollison, Jr., E. Farish Percy, Oxford, Gary Carnathan, Attorneys for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND THOMAS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. This case involves a dispute over a fund of $35,463.18 that has been paid into the registry of the Chancery Court of Lee County. The parties to this appeal have stipulated this to be the amount of workers' compensation benefits paid by Mississippi Food and Fuel Workers' Compensation Trust ("the Trust"), acting as trustee for a number of self-insured employers that include Wilburn Oil, arising out of the work-related death of Tony Murphree, a Wilburn Oil employee. The parties have further stipulated that the Trust's payments were solely for funeral and medical expenses related to Murphree's death.
¶ 2. The funds represent a portion of a settlement between Bobbi Tackett, the adult daughter of Tony Murphree acting as sole wrongful death beneficiary of her father, and several third parties whose negligence was alleged to have been a proximate contributing cause to Murphree's death. The competing claimants to the fund are (a) Bobbi Tackett as the wrongful death beneficiary and (b) the Trust, which seeks reimbursement of its payments out of this recovery. The chancellor determined that the Trust was not entitled to recover its previously-paid benefits on several different grounds. The Trust, dissatisfied with that ruling, perfected this appeal. We conclude that the chancellor erred, and we reverse and render judgment for the Trust.

I.

Facts
¶ 3. Tony Murphree, while on the job for his employer, Wilburn Oil, was killed in an *138 accident. Wilburn Oil was self-insured under Mississippi workers' compensation laws by virtue of its participation in the Mississippi Food and Fuel Workers' Compensation Trust. The Trust paid certain funeral expenses and medical bills associated with Murphree's fatal injuries in the amount of $34,104.92. For reasons not relevant to our consideration, the parties have now agreed that the actual amount in controversy arising out of these payments is $35,463.18; the amount now held in the registry of the Lee County Chancery Court in this cause.
¶ 4. Murphree's adult daughter, Bobbi Tackett, brought a wrongful death action against a number of defendants whose negligence was said to have contributed to Murphree's death. After suit was filed, but before the case was tried, Tackett reached a settlement with several of the defendants. The agreed settlement exceeded the amount previously paid by the Trust as compensation benefits. Upon reaching the proposed settlement, Tackett's attorney contacted Wilburn Oil to inquire as to whether Wilburn Oil would accept $10,000 in settlement of any claim it might have to these funds as such rights existed under Miss.Code Ann. § 71-3-71 (Rev.1995). That section is a part of the State's workers' compensation laws that permits an employer or carrier to recover previously-paid benefits out of the recovery an injured worker or his personal representative makes against third party tortfeasors. Wilburn Oil declined the proposed offer.
¶ 5. When Wilburn Oil declined the offer, Tackett filed this proceeding as a declaratory judgment action in the Chancery Court of Lee County, asking the chancellor to determine that Wilburn Oil's right of recovery was barred on several alternative grounds. These grounds included (a) a claim that the statute of limitations had expired on the Trust's right to pursue reimbursement out of any recovery against third parties, (b) that the Trust was estopped from asserting its claim because of the long period after Murphree's death during which the Trust did nothing to assert its right of reimbursement, and (c) in the alternative, that the Trust's right of reimbursement was barred by the equitable doctrine of laches.
¶ 6. When the matter of approving the settlement against some, but not all, of the defendants in the circuit court action came on for consideration, the circuit court approved the settlement and finally released the settling defendants from liability on the condition that Tackett tender into the pending chancery proceeding an amount sufficient to satisfy the Trust's then-unresolved reimbursement claim. Tackett agreed to this procedure, the result being that she tendered the $35,463.18 mentioned earlier in this opinion to await the outcome of the chancery litigation.
¶ 7. Ultimately, the circuit court tort action went to trial against the two non-settling defendants. In that trial, the court permitted the jury to apportion percentages of fault in Tony Murphree's death among Murphree himself, Wilburn Oil, and those defendants remaining in the action. The jury determined that 60% of the fault lay with Murphree based on his own negligence, 39% of the fault was attributable to Wilburn Oil, and only 1% of fault could be attributed to the third party defendants remaining in the suit.
¶ 8. Upon obtaining that determination in the circuit court action, Tackett amended her pleadings in the chancery court declaratory judgment action to further suggest that it would violate principles of equity to permit the Trust to recover its previously-paid compensation benefits when a jury had determined that Wilburn Oil was 39% at fault in Tony Murphree's death.
¶ 9. The chancellor entered summary judgment for Tackett. The chancellor ruled that there were five separate grounds to deny the Trust's right of recovery. The reasons advanced by the chancellor were as follows:

*139 1. The right of reimbursement was defeated by the fact that the wrongful death beneficiary did not receive any of the compensation benefits paid by the Trust. The chancellor, in so ruling, relied on the case of U.S. Fidelity & Guaranty Co. v. Higdon, 235 Miss. 385, 109 So.2d 329 (1959).
2. The statute of limitations had expired on the Trust's right to intervene in the wrongful death action before the Trust took any action to legally assert its right of recovery.
3. The Trust's motion to intervene in the circuit court action was untimely under Mississippi Rule of Civil Procedure 24(a)(1).
4. The Trust's motion to intervene was barred by the equitable doctrine of laches.
5. The jury's determination that Wilburn Oil was 39% at fault in Tony Murphree's death barred the Trust's right of recovery on principles of equity.
¶ 10. We will consider these issues individually in the same order as advanced by the chancellor in his findings of fact and conclusions of law.

II.

Preliminary Comments
¶ 11. Before reaching the merits of this appeal, the Court notes the somewhat unusual notion upon which this case is premised, that notion being that the chancery court can render a declaratory judgment adjudicating the rights of parties and potential parties to a suit then pending in the circuit court. The practice of having one court determine the propriety of proceedings in another court raises significant concerns regarding the efficient administration of justice, since the management of a case, including decisions regarding the admission or exclusion of parties to the litigation, would seem to be necessarily vested in the court in which the case is pending. Nevertheless, we note that all parties and both trial courts acquiesced in the procedure followed here and, in fact, submitted the res of the disputethe funds themselves to the chancellor for determination. Though we are not satisfied that the procedure followed in this instance was one designed to bring a prompt resolution of all matters in dispute between the parties with a minimum employment of the limited judicial resources of our State, we are satisfied that to delay a final resolution further by raising procedural questions on our own motion would only compound the problem. Our decision to reach the merits of this case, however, should not be read as an endorsement of procedure followed in this case.

III.

The Applicability of the Higdon Case
¶ 12. In U.S. Fidelity & Guaranty Co. v. Higdon, the workers' compensation benefits accruing out of the work-related death of John Nixon were paid to a minor child who had no familial relation to him known under the law. The award was based on a determination that the child, though not related, was living in Nixon's home and was actually dependent on him for her support. Higdon, 235 Miss. at 389, 109 So.2d at 330. The statutory wrongful death beneficiary, on the other hand, was Nixon's widow. The widow was not entitled to workers' compensation benefits because, at the time of Nixon's death, the couple was estranged and the wife was not dependent upon Nixon for support. After the widow successfully pursued a wrongful death claim against a third party, Nixon's workers' compensation carrier sought to recover its payments from the widow's recovery. The Mississippi Supreme Court denied the carrier's claim by construing Section 71-3-71 to create a right of subrogation in the carrier rather than a new and independent right of action not derivative in nature. The court reasoned that, in the absence of any prior payment to the wrongful death beneficiary by the carrier, there could be no right of subrogation *140 against the wrongful death claim. Id. 235 Miss. at 394, 109 So.2d at 332-33. The court concluded that the underlying purpose of Section 71-3-71 was to prevent an unconscionable double recovery by the workers' compensation beneficiary, and that such a situation did not arise when the compensation beneficiary and the wrongful death beneficiary were not the same person. Id.
¶ 13. In the case before us, the chancellor seized upon language in the final paragraph of the Higdon opinion, where the court said, "[w]e think that Section 30 of the Act [present Section 71-3-71] was predicated upon the assumption that a compensation beneficiary would also be a beneficiary under the wrongful death statute." Id. 235 Miss. at 397, 109 So.2d at 334. The chancellor observed that Tackett, because she was an adult and not dependent upon her father for support, did not directly receive any compensation benefits. Therefore, the chancellor reasoned, Tackett could not have her wrongful death recovery diminished in favor of the Trust, because the Trust's claim was not predicated on the necessary assumption of identical claimants dictated by Higdon.
¶ 14. The reasoning employed by the supreme court to reach its decision in Higdon does not apply to the particular facts of this case, however, because of an amendment to the wrongful death statute occurring after Higdon. At the time of the Higdon decision, funeral expenses and medical expenses associated with the injury (the sole types of payments at issue in this case) were not a proper element of damage for a wrongful death claimant. Rather, any right of recovery of these expenses remained an asset of the estate of the decedent, and could be recovered only by a separate count in the wrongful death suit asserted on behalf of the deceased's personal representative. Under the law that existed at that time, wrongful death benefits were not chargeable with any of the decedent's debts so long as the statutory claim accrued to those kinsmen enumerated in the wrongful death statute. Since the wrongful death recovery accruing directly to these kinsmen could not be charged with payment of these expenses, see Miss.Code Ann. § 1453 (Rev.1956), it logically followed that there was no right in these kinsmen to recover those costs as an element of damage.
¶ 15. This situation was changed by act of the Mississippi Legislature in 1977, when the following provision was inserted into this State's wrongful death action:
In an action brought pursuant to the provisions of this section by the widow, husband, child, father, mother, sister or brother of the deceased, or by all interested parties, such party or parties may recover as damages property damages and funeral, medical or other related expenses incurred by or for the deceased as a result of such wrongful or negligent act .... Any amount, but only such an amount, as may be recovered for property damage, funeral, medical or other related expenses shall be subject only to the payment of the debts or liabilities of the deceased for property damages, funeral, medical or other related expenses.
Law of March 31, 1977, ch. 435, Senate Bill No. 2584, 1977 Miss. Laws 660-662 (codified as amended at Miss.Code Ann. § 11-7-13 (1977)) (emphasis added).
¶ 16. Thus, in Higdon, the wrongful death beneficiary was prohibited from pursuing recovery for funeral and medical expenses and, correspondingly, her recovery could not be charged with liability for those expenses. However, under the terms of the statute in effect when Tackett commenced her wrongful death action, she could pursue recovery for funeral and medical expenses as a part of her cause of action. Therefore, although Tackett did not directly receive any compensation benefits because of her father's death, she did receive a real benefit based on the amount the Trust paid in satisfaction of her father's medical bills and funeral expenses, since otherwise, these obligations would have been a charge against her wrongful *141 death recovery. If Tackett were permitted to pursue recovery of those expenses as a part of her damage claim, yet have no obligation to actually pay those expenses because they had been paid through workers' compensation benefits, Tackett would be receiving an inequitable windfall very much in the nature of the potential duplicated benefits discussed in critical terms by the Higdon court Higdon, 235 Miss. at 394, 109 So.2d at 332-33.
¶ 17. It should be noted that we do not deal with a situation where the Trust paid death benefits directly to a beneficiary determined under compensation law and then seeks recovery of those payments from a different wrongful death beneficiary. In this case, Tackett's father had no dependents eligible to receive compensation benefits. As a result, the Trust's sole obligation was to pay the medical expenses associated with Murphree's injury and contribute toward the cost of his funeral expenses in the amount contemplated under Section 11-7-13. Miss.Code Ann. § 11-7-13 (Supp.1999). It is those expenditures alone that the Trust now seeks to recover, and it is the post-Higdon amendment to this State's wrongful death statute to make those items an element of the wrongful death beneficiary's damages that requires a different outcome from that reached in Higdon. Thus, nothing in our decision alters the rule of Higdon that compensation benefits paid directly to a dependent determined under the workers' compensation law may not be recovered from a different wrongful death beneficiary who did not share in the compensation benefits.
¶ 18. Our review of the chancellor's interpretation of the law is de novo. Consolidated Pipe & Supply Co., Inc. v. Colter, 735 So.2d 958 (¶ 13) (Miss.1999). As to his ruling on the applicability of Higdon as a bar to the Trust's claim, the chancellor erred.

IV.

The Statute of Limitations Bar
¶ 19. The chancellor held that the Trust's right of recovery was barred by the State's three year statute of limitation. Miss.Code Ann. § 15-1-49 (Rev.1995). The chancellor concluded that, in view of the fact that the Trust had the option of either joining in a wrongful death claim or bringing its own independent action under Section 71-3-71, the statute of limitations required the Trust to do one or the other within three years from the time its cause of action accrued. The chancellor cited no authority for the proposition, and we disagree that this is the law. This holding by the chancellor appears to be at odds with the established law in other jurisdictions. Foster v. Peddicord, 826 F.2d 1370 (4th Cir.1987), Travelers Ins. Co. v. Leedy, 450 P.2d 898 (Okla.1969), and Franks v. Sematech, Inc., 936 S.W.2d 959 (Tex.1997) all involved attempts by compensation insurers to intervene in an injured worker's third-party tort claim after the statute of limitations had run. Those courts unanimously held that the intervention related back to the time of the filing of the suit. These cases note that the purpose of the statute of limitation is principally to protect the interest of the tort defendant, not to provide a windfall to the injured worker when the carrier may have been something less than diligent in exercising its right of intervention.
¶ 20. Other courts, confronted with essentially the same question where a contractual, rather than statutory, right of subrogation is involved, have similarly declined to impose a statute of limitation bar to the right of intervention, holding that the intervention relates back to the time of filing of the original action by the injured insured. In Range v. National R.R. Passenger Corp., the United States District Court for the Western District of New York declined to dismiss an intervening insurer's claim, saying that "intervention by an insurance carrier to protect its subrogation rights is, in effect, a substitution of the real party in interest which relates back to the time of filing of the original *142 complaint so as to prevent a statute of limitations bar." Range v. National R.R. Passenger Corp., 176 F.R.D. 85, 88 (W.D.N.Y.1997); see also Marion v. Baker, 42 Ohio App.3d 151, 537 N.E.2d 232 (1987) (stating that an insurer's intervention was permitted after two year limitation period had run).
¶ 21. We are persuaded by the well-reasoned decisions of these other jurisdictions that the chancellor's assertion of a contrary result must be reversed. We, therefore, adopt the general rule that an insurance company's intervention in an injured worker's third-party tort claim to assert the company's right of subrogation is not subject to a statute of limitations bar so long as the original action was commenced by the injured worker (or his personal representative) within the applicable limitation period.

V.

The Timeliness of MFFWCT's Assertion of Its Right
¶ 22. There is ample authority for the proposition that, so long as an insurer attempts to intervene prior to actual disbursement of any judgment or settlement proceeds, the intervention solely to protect a statutory right of subrogation is timely under Rule 24 and raises no questions of prejudice to the injured worker that would be necessary to invoke the equitable doctrines of estoppel or laches. McDonald v. E.J. Lavino Co., 430 F.2d 1065 (5th Cir. 1970); Mitchell v. Etna, 138 F.2d 37, 42 (3rd Cir.1943); Legler v. Douglas, 26 Ill. App.2d 365, 167 N.E.2d 813, 819 (1960); McCluskey v. Thompson, 363 So.2d 256, 264-65 (Miss.1978), rev'd on other grounds.
¶ 23. In the case before us, Tackett makes no claim that she was prejudiced by the delay in the Trust's attempts to formally intervene in the circuit court action. There can be no doubt that she was well aware of the existence of such a claim by virtue of the fact that, upon reaching a settlement with some of the alleged tortfeasors contributing to her father's death, she unilaterally attempted to effect a compromise of the Trust's claim.
¶ 24. The persuasive weight of the McDonald case decided by the Fifth Circuit is substantially bolstered, in our view, by the fact that it was cited with apparent approval by the Mississippi Supreme Court in the McCluskey decision. In McDonald, the insurer was, beyond question, on notice of the third party tort suit, as evidenced by the fact that the company sent an attorney observer to the trial. However, much as in this case, the insurer had taken no formal steps to intervene in the action until substantially late in the case. In fact, the insurer in McDonald did not attempt to intervene until after judgment had been obtained. McDonald, 430 F.2d at 1067. In spite of that fact, the Fifth Circuit noted that the insurer was not seeking to reopen the case or litigate anew some issue already tried to conclusion. Id. at 1071. On those facts, the court found that the recipient of the compensation benefits had not been prejudiced in any way by any untimeliness in formally asserting subrogation rights and permitted the insurer to recover. Id. at 1072.
¶ 25. No facts peculiar to Tackett's wrongful death claim appear in this record that would render the Trust's right to intervene to assert its subrogation rights any more inequitable than in McDonald. The chancellor's judgment does not suggest the existence of any such unique facts, nor does Tackett propose to describe how she was prejudiced by the Trust's inaction in her brief.
¶ 26. As the Fifth Circuit observed in the McDonald case, the right of subrogation is, in the final analysis, the substantive right protected under the law. Intervention is merely a procedural means by which that substantive right is protected. McDonald, 430 F.2d at 1070. We are convinced that, under firmly-established precedent, the Trust's substantive right to *143 assert its statutory subrogation claim remained viable at the time this action was commenced in Lee County Chancery Court. The chancellor was in error in holding otherwise.

VI.

Equitable Considerations Based on Employer's Fault
¶ 27. As to the chancellor's finding that it would be inequitable to permit the Trust to recover any part of its payment of workers compensation benefits in the face of an adjudication that Wilburn Oil, the employer through whom the Trust was asserting its claim, was substantially at fault in causing Murphree's fatal injuries, we conclude that the chancellor abused his discretion. The right of reimbursement to the Trust exists by virtue of statute and must rise or fall strictly as a matter of statutory interpretation. A chancellor, despite his broad equitable powers, is not free to disregard the clear guidance of a pertinent statute simply because he concludes that it would be unfair on the particular facts of the case to apply the statute according to its terms.
¶ 28. Section 71-3-71, insofar as it creates a right of reimbursement to a workers compensation carrier, has existed in essentially unchanged form since the adoption of workers' compensation laws in this State in 1948. The statute explicitly provides for the manner of distribution of a third party tort recovery by an injured worker covered under workers' compensation laws and says that any such recovery shall be applied first to the "reasonable costs of collection" and the balance "shall be used to discharge the legal liability of the employer or insurer...." Miss.Code Ann. § 71-3-71 (Rev.1995). Only after those matters are disposed of does the statute provide that "any excess shall belong to the injured employee or his dependents." Id.
¶ 29. The statute does not condition this right of reimbursement upon a lack of blameworthiness of the employer in the causation of the injury. Certainly, prior to the adoption of Section 85-5-7 of the Mississippi Code, which permits apportionment of fault among multiple actors, there was no readily-available means to determine an employer's degree of fault in a work-related injury. Nevertheless, if the bar to recovery is purely equitable in nature, as the chancellor concluded, then those equitable considerations pre-existed the adoption of Section 85-5-7 and there would have been no valid reason why such an equitable bar could not have been interposed in a chancery action prior to the adoption of Section 85-5-7. We find no reported case where an attempt was made to assert such an equitable bar against an employer or carrier seeking reimbursement under Section 71-3-71, and accept that fact as tending to confirm our view that the alleged fault of the employer in the injured worker's injury cannot be set up as a bar to the employer's right of recovery under Section 71-3-71 any more than the employer may bar compensation benefits to an injured worker by asserting that the injury arose out of the worker's own fault.
¶ 30. If the adoption of Section 85-5-7 and the opportunity it affords to adjudicate fault to an employer has revealed an inequitable situation in the manner in which this State's workers' compensation laws are administered, that is a matter for correction by the Mississippi Legislature and not the chancery court or this Court.
¶ 31. Having concluded that none of the five reasons advanced by the chancellor to bar the Trust's statutory right of reimbursement have merit, we conclude that the chancellor's decision must be reversed. Having further concluded that, upon the facts stipulated by the parties, the Trust is entitled to reimbursement as a matter of law, we determine that no purpose would be served by remanding this matter to the trial court. Therefore, we reverse the judgment of the chancellor and render judgment in favor of the Trust, thereby *144 entitling it to receive those funds now in the registry of the Lee County Chancery Court together with those earnings that have accrued since the fund was paid into the court's registry.

VII.

Conclusion
¶ 32. The chancellor, as a part of his ruling, made alternative findings that if, in fact, the Trust should be entitled to reimbursement, it would only be equitable to have the amount of reimbursement diminished by a pro rata share of the expenses of pursuing the third party action that produced the fund. Tackett, in her appellee's brief, attempts to argue the correctness of that holding as a sort of fall-back position. This aspect of the chancellor's judgment is of no effect since he had already concluded that there was no right of reimbursement. It seems, at best, to be an attempt to shape the ultimate outcome of the case in the event the chancellor's decision is overturned on appeal, which is a matter beyond the reach of the trial court.
¶ 33. Even assuming the issue to be preserved procedurally, the contention that the carrier's recovery can be charged pro rata with the costs of pursuing recovery is, in our view, erroneous. The statute states that, from any recovery, the costs of collection will be first paid, the carrier's right of reimbursement will next be paid, and the surplus thereafter remaining will be distributed to the employee or his representatives. Miss.Code Ann. § 71-3-71 (Rev.1995). It is difficult to imagine a clearer statement directing the proper disposition of "any amount recovered by the injured employee or his dependents (or legal representative) from a third party." Id. (emphasis added).
¶ 34. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY DENYING REIMBURSEMENT IS REVERSED AND JUDGMENT IS HEREBY RENDERED IN FAVOR OF THE APPELLANT ENTITLING APPELLANT TO THE FUNDS NOW HELD IN THIS CAUSE IN THE REGISTRY OF THE CHANCERY COURT OF LEE COUNTY TO INCLUDE ALL EARNINGS ON SAID FUNDS SINCE PAID INTO THE REGISTRY OF THAT COURT. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. LEE, J., CONCURS IN RESULT ONLY.