363 So.2d 256 (1978)
Helen L. McCLUSKEY, Administratrix of the Estate of Carol McCluskey, Deceased,
v.
A.J. THOMPSON et al.
BECHTEL POWER CORPORATION and the Travelers Insurance Company
v.
Helen L. McCLUSKEY etc.
Nos. 50002, 50011.
Supreme Court of Mississippi.
September 20, 1978.
Rehearing Denied November 1, 1978.
*257 John B. Clark, Daniel, Coker, Horton, Bell & Dukes, Jackson, for Bechtel Power Corp. and Travelers Ins. Co.
Teller, Biedenharn & Rogers, Landman Teller, Vicksburg, for McCluskey.
Watkins & Eager, Hassell H. Whitworth, Jackson, for A.J. Thompson et al.
EN BANC.
SUGG, Justice, for the Court:
Mrs. Helen L. McCluskey brought suit in the Circuit Court of Warren County, against A.J. Thompson, et al., who were coemployees of the decedent, Carol McCluskey, for the alleged wrongful death of the decedent. According to the declaration, plaintiff's husband, Carol McCluskey, was employed by Bechtel Power Corporation which was engaged in the construction of the Grand Gulf Nuclear Power Plant located in Claiborne County. On July 1, 1975, a portable light plant, weighing about 3,000 pounds, fell from a crane and killed McCluskey.
A.J. Thompson demurred to the declaration on the grounds that they owed no individual duty to the decedent and that the Mississippi Workmen's Compensation Act bars a common law tort suit against them as fellow employees for the work-related injuries and death suffered by the decedent. In sustaining the demurrer, the trial court stated "[i]t is the court's opinion that the purpose and spirit and philosophy of the Workmen's Compensation Act was to make compensation the exclusive remedy of the employee where he is injured by the employer or any of the employees." Plaintiff appealed.
The other appellants, Bechtel and Travelers, were named in the declaration as defendants because they paid workmen's compensation benefits to the plaintiff, as the widow of McCluskey. Bechtel and Travelers claimed they would be entitled, pursuant to section 71-3-71 Mississippi Code Annotated (1972), to "the first fruits of the net of any recovery, from such third party defendants here sued." The declaration sought to have them "assert such, if any, claims which they may have in the premises." Bechtel and Travelers demurred on the ground that suit against them was precluded by section 71-3-9 Mississippi Code Annotated (1972), and requested that they be dismissed as defendants without prejudice to their rights to later intervene as plaintiffs under section 71-3-71 Mississippi *258 Code Annotated (1972). In overruling their demurrer the trial court found that although section 71-3-71 establishes a right to intervention, it puts no time limit on the exercise of this right. Finding this to be an undesirable "situation of uncertainty," the trial court "in its common law discretion" ordered that Bechtel and Travelers either intervene within thirty days as party plaintiffs, or disclaim any interest in the proceeds of any recovery by plaintiff. They now appeal from that order.
There are two issues on appeal here:
(1) Whether the trial court erred in finding that workmen's compensation is the exclusive remedy of the employee where he suffers a work-related injury as a result of the negligence of a coemployee; and
(2) Whether the trial court erred in setting a time limit within which an employer or insurer must intervene under section 71-3-71 Mississippi Code Annotated (1972) or disclaim any interest in a third party suit.
The question of whether an employee who is injured because of the negligence of a fellow servant can sue his negligent fellow servant or is limited to benefits under the Workmen's Compensation Act was considered in Stubbs v. Green Brothers Gravel Co., Inc., 206 So.2d 323 (Miss. 1968).
Stubbs sued Green Brothers Gravel Co., Inc. and its employee, Jamie Brown, and alleged that he was injured when his vehicle was struck by a truck driven by Brown which was owned by Green. He also alleged that Brown was not keeping a proper lookout, did not have his vehicle under control or in proper repair, and these negligent acts were contributing proximate causes of plaintiff's injuries. Green and Brown denied the charges and specially pled two defenses in bar of the action. The first defense was that Stubbs was an employee of Green, his injuries occurred in the scope of his employment, and the Workmen's Compensation Act was Stubbs' exclusive remedy. The second defense was that Brown and Stubbs were fellow servants of Green at the time of the collision, and each was engaged in the performance of his duties within the scope of his employment at the time of the collision. The trial court sustained the first defense and held that the Workmen's Compensation Act was Stubbs' exclusive remedy. On appeal, we affirmed and stated:
This case is what Larson calls an `upside-down compensation case,' in the form of a negligence action in which the employee is trying to get out from compensation coverage to escape the exclusive provisions of the act, and the employer is asserting compensation coverage. I Larson, Workmen's Compensation Law § 26.10, at 452.11 (1965). Reason and consistency require that we apply the provisions of the act and the decisions interpreting it with an equal hand, both where coverage is asserted and where the exclusive remedy provisions of the statute are involved. See 2 id. § 65.10 (1961).
In summary, the circuit court was correct in dismissing this tort action, because appellant's exclusive remedy is under the Workmen's Compensation Act. (206 So.2d at 325).
We held that Stubbs' exclusive remedy was under the Workmen's Compensation Act and dismissed his tort action against both his employer and his fellow servant. Our holding in Stubbs prohibited recovery by an injured employee against his fellow servant because his exclusive remedy was under the Workmen's Compensation Act. The opinion did not assign reasons for holding Stubbs' exclusive remedy was under the Workmen's Compensation Act. We therefore deem it necessary to discuss the effect and purposes of the Act. If plaintiff could recover from a fellow servant of the decedent, it would permit an employer or compensation insurer to shift the burden of workmen's compensation benefits to a fellow servant.[1]
*259 The Workmen's Compensation Act was designed to compensate victims of industrial accidents and aid in their rehabilitation and restoration to health and vocational opportunity. Section 71-3-1 Mississippi Code Annotated (1972). The Workmen's Compensation Act represents a wide departure from common law because the Act precludes a common law tort action by an employee against his employer but, in return, assures the employee an award without the necessity of showing fault or negligence on the part of the employer. The legislature has substituted a no-fault compensation system to replace the common law action by employees against employers and thus determined that the cost of this no-fault compensation should be borne by the employing industry. This brings into play the concept of enterprise liability and logically places the burden of providing compensation for industrial injuries upon the employer. Compensation for industrial injuries is rightfully placed upon the employer because, (1) industrial injuries are causally related to the fact of employment, and (2) the employer is in a position to pass this cost to society in the form of higher prices.
If the plaintiff in this action is permitted to recover from the fellow servants of the deceased employee, the employer and carrier would be fully reimbursed for all benefits paid the statutory beneficiaries of the deceased employee. This would effectively transfer the ultimate burden of providing compensation from the industry, where it belongs, to fellow servants, where it does not belong.
We have held that any construction given to the Workmen's Compensation Act must be sensible as well as liberal. Deemer Lumber Co., et al. v. Hamilton, 211 Miss. 673, 52 So.2d 634 (1951); Lucedale Veneer Co. v. Rogers, 211 Miss. 613, 48 So.2d 148 (1950) (suggestion of error overruled 211 Miss. 613, 53 So.2d 69 (1951)). Another familiar rule of statutory construction is that the intent of the legislature must be determined by the total language of the statute and not from a segment considered apart from the remainder. Brady v. John Hancock Mut. Life Ins. Co., 342 So.2d 295, appeal dismissed 434 U.S. 804, 98 S.Ct. 32, 54 L.Ed.2d 61 (Miss. 1977); Miss. Public Service Commission v. City of Jackson, 328 So.2d 656 (Miss. 1976); McCaffrey's Food Market, Inc. v. Mississippi Milk Commission, 227 So.2d 459 (Miss. 1969). Also, the intent of the legislature must be determined by studying words used in a statute in context. Akers v. Johnson's Estate, 236 So.2d 437 (Miss. 1970).
When these rules of statutory construction are applied to the Workmen's Compensation Act in its entirety, it is apparent that the legislature did not intend to allow an employer or compensation insurer to recover compensation benefits paid by them from a fellow servant of the injured employee.
A number of other states have reached the same conclusion and construed their Workmen's Compensation Acts as a bar to a negligence action by a covered employee seeking damages for the same injuries against a coemployee. Those decisions generally hold that such suits would destroy the purposes of workmen's compensation.
For example, in Madison v. Pierce, 478 P.2d 860 (Mont. 1970) an injured employee received a compensation award and then sued three officers and the foreman of her corporate employer. The Montana Compensation Act reserved the injured employee's right to sue: "Some persons or corporations other than his employer." The defendants filed a motion for a summary judgment asserting that the compensation act provided the exclusive remedy for the injured employee. The trial court sustained the motion for summary judgment and the Montana Supreme Court in affirming, stated:

*260 The specific question before us is whether section 92-204 granting immunity from common law or statutory negligence actions by the injured employee to `persons or corporations other than his employer' grants such immunity to coemployees of the injured workman.
.....
The language of the Montana Act does not expressly specify whether coemployees are included or excluded from immunity from negligence actions by the injured employee. To determine the intent of the legislature in this regard, we must look to the purposes of the Act and its provisions for the accomplishment of such purposes.
The broad purpose of the Montana Workmen's Compensation Act is to substitute a system for the payment of medical costs and wage losses to injured employees without regard to fault, for the common law system of legal action by the injured employee against the one whose negligence proximately caused his injury. The principle behind this legislation was that the business enterprise or industry should directly bear the costs of injury to its employees in the same manner as the enterprise has always borne the costs of maintaining and repairing its plant, machinery and equipment. The business enterprise should pass along the costs of maintenance and repair of its human resources, its employees, in the same manner as is done in the case of other production costs, namely in the price at which its product is sold to the public. This underlying purpose finds summary expression in the familiar phrase `the cost of the product should bear the blood of the workman.'
.....
The foregoing purposes and structure of the Montana Workmen's Compensation Act demonstrate its foundation of enterprise liability for injury to its employees, paid directly by the employer in the first instance and ultimately passed on to the public in the price of its product. To permit an injured employee to collect compensation for injury from his employer under the Act and additionally sue a negligent coemployee of the same enterprise for the same injury, with the employer recouping his compensation payments, destroys the purposes and structure of the entire Act. We do not believe the legislature intended such result.
If section 92-204 were construed to withhold immunity to a coemployee from a negligence action, the cost of injury to an employee of the business would be shifted from the employer, where the Act places it, to a fellow employee, where the Act does not place it. It also would defeat the ultimate payment of injury cost by the public purchasing the product. This result would follow if section 92-204 were interpreted as urged by plaintiff because of the suit rights, subrogation rights, and lien rights granted the employer by this section. We cannot believe the legislature intended to permit the ultimate costs of employee injury to be borne by fellow employees, whether negligent or not. It would be a sad spectacle, indeed, for a workman to find his home taken and his future earnings subjected to payment of a judgment in such a suit; nor did the legislature intend to permit any such action.
The purposes and provisions of the Act can be fully effectuated by permitting negligence actions, in addition to compensation, only against strangers to the business enterprise. There is no reason why negligent strangers to the business should not pay the cost of injury to employees of the enterprise. The suit rights, subrogation rights, and lien rights granted to the employer under the Act, together with the compensation rights and suit rights granted the employee, permit ultimate collection of injury costs from a negligent stranger to the business enterprise. The Act does not cover strangers, only employees. There is no substitution of rights under the Act for common law remedies as between strangers on the one hand and employers and employees of the business on the other. (478 P.2d at 862, 863 and 864).
*261 In Warner v. Leder, 234 N.C. 727, 69 S.E.2d 6 (1952) the North Carolina Supreme Court stated:
[T]he provision in G.S. § 97-10 which gives the injured employee or his personal representative `a right to recover damages for such injury, loss of service, or death from any person other than the employer,' means any other person or party who is a stranger to the employment but whose negligence contributed to the injury. And we further hold that such provision does not authorize the injured employee to maintain an action at common law against those conducting the business of the employer whose negligence caused the injury. To hold otherwise would, in a large measure, defeat the very purposes for which our Workmen's Compensation Act was enacted. Instead of transferring from the worker to the industry, or business in which he is employed, and ultimately to the consuming public, a greater proportion of the economic loss due to accidents sustained by him arising out of and in the course of his employment, we would, under the provisions for subrogation contained in our Workmen's Compensation Act, G.S. § 97-10, transfer this burden to those conducting the business of the employer to the extent of their solvency. The legislature never intended that officers, agents, and employees conducting the business of the employer, should so underwrite this economic loss. (69 S.E.2d at 9, 10).
Other cases could be cited to the same effect, but the two quoted above fortify our holding that the Mississippi Workmen's Compensation Act should be construed to bar a suit by an injured employee against a fellow servant when the plaintiff is covered by the Act.
Plaintiff contends her suit is maintainable under section 71-3-71 Mississippi Code Annotated (1972) which provides in part the following:
The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue any other party at law for such injury or death ...
It is argued that the terms of a statute must be given their common meaning, and a statute which is in derogation of the common law must be strictly construed, and must not be extended beyond what is clearly indicated by its express terms or by necessary implication. A similar argument was advanced in Madison v. Pierce, supra, and disposed of in the following language:
Plaintiff's third argument is that the Workmen's Compensation Act, being in derogation of common law, should be strictly construed to permit plaintiff's suit in the instant case. We accept the rule that statutes eliminating common law rights should be strictly construed. But where, as here, common law rights cannot be preserved within the structure of the statutory Workmen's Compensation Act and the purpose of such Act cannot be fulfilled without their elimination, it is apparent that the legislature eliminated such common law rights by implication, if not by express language. Our Act and the common law right to sue a fellow employee cannot coexist, so the latter must give way. (478 P.2d at 865).
We agree that the terms of a statute must be given their common meaning; however, we must recognize that the Workmen's Compensation Act is an entirely new system replacing the fault based system of tort with the no-fault system of enterprise liability. From a practical standpoint, the uncertainty of an injured employee being fully compensated by a jury verdict based on a tort action alleging negligence against his employer is replaced by the certainty of recovery in a fixed sum, although the fixed sum may be less than his actual injuries and may be less than an amount that might be fixed by a jury.
We should no longer cling to the concept that a statute in derogation of common law must be interpreted strictly. Dean Roscoe Pound, one of the legal giants of this century, addressed this concept in his *262 monumental work, Jurisprudence, as follows:
Another feature of this common-law notion of a sharp division between the traditional element and the imperative element whereby, as it were, the imperative element is regarded as an intruder in the body of the law, is a doctrine of strict construction of statutes in derogation of the traditional element. It is said commonly that three classes of statutes are to be construed strictly, namely: (1) penal statutes; (2) statutes in derogation of common right; and (3) statutes in derogation of the common law. It may be doubted if there is much justification today for any of these three categories. It would seem that with respect to all legislation the construction ought to be liberal with a view to ascertaining and giving effect to the purpose of the legislative provision. But there is more justification for some of these categories than for others. With respect to the doctrine that penal statutes are to be construed strictly it may at least be remarked that political liberty requires clear and exact definition of the offense which is to be visited with loss or impairment of life, liberty, or property. In the same way, the rule as to statutes in derogation of common right has some excuse in England where there are no constitutional restrictions on legislation. It really is but a way of saying that interpretations which involve mischievous consequences are to be avoided. In the United States it means that interpretations which would make an act unconstitutional are to be avoided. Whenever it is applied beyond these limits it is without excuse and is only an incident of the historical attitude of the common-law courts toward legislation. The proposition that statutes in derogation of the common law are to be construed strictly has no analytical or philosophical justification. It assumes that legislation is something to be deprecated. As no statute of any consequence dealing with any relation of private law, unless declaratory, can be anything but in derogation of the common law, under this doctrine the social worker and the legal reformer must always face the situation that the legislative act which represents the fruit of their labors will find no sympathy in those who apply it, will be construed narrowly, and will be made to achieve as little as possible. Yet the doctrine has been extolled as a fundamental principle of jurisprudence by those American writers who adhered to Savigny's views as to the futility of legislation. [Vol. 3, R. Pound, Jurisprudence, § 111, at 663-665 (1959)].
We agree with the views expressed by Dean Pound quoted above. To do otherwise relegates statutes to a secondary status, a position we no longer accept. Dean Pound suggested four ways in which courts might deal with a legislative innovation:
Four ways may be conceived of in which courts in such a legal system as ours might deal with a legislative innovation. (1) They might receive it fully into the body of the law as affording not only a rule to be applied but a principle from which to reason, and hold it, as a later and more direct expression of the general will, of superior authority to judge-made rules on the same general subject; and so reason from it by analogy in preference to them. (2) They might receive it fully into the body of the law to be reasoned from by analogy the same as any other rule of law, regarding it, however, as of equal or co-ordinate authority in this respect with judge-made rules upon the same general subject. (3) They might refuse to receive it fully into the body of the law and give effect to it directly only; refusing to reason from it by analogy but giving it, nevertheless, a liberal interpretation to cover the whole field it was intended to cover. (4) They might not only refuse to reason from it by analogy and apply it directly only, but also give to it a strict and narrow interpretation, holding it down rigidly to those cases which it covers expressly. The fourth hypothesis represents the orthodox common law attitude toward legislative innovations. Probably the third hypothesis, *263 however, represents more nearly the attitude toward which we are tending. The second and first hypotheses doubtless appeal to the common law lawyer as absurd. He can hardly conceive that a rule of statutory origin may be treated as a permanent part of the general body of the law. But it is submitted that the course of legal development upon which we have entered already must lead us to adopt the method of the second and eventually the method of the first hypothesis. [21 Harv. L.Rev. 385, 386 (1908)].
The suggestion made by Dean Pound seventy years ago with respect to the construction of legislative acts was the practice in this state many years before Dean Pound wrote on the subject. An example of this is our treatment of the statute commonly referred to as the "woman's law" which was first enacted February 15, 1839 and amended February 28, 1946. Chapter 34, Articles 4 and 7, Hutchinson's Mississippi Code. Clarke v. McCreary, 20 Miss. 347 (1849) involved the title to slaves who came into the possession of the wife of McCreary in September, 1839 after the "woman's law" went into operation in April, 1839. The question was whether property inured to the separate use of Mrs. McCreary or whether title to the slaves vested absolutely in Mr. McCreary under the common law; or descended in accord with the statute. In determining this question, the Court held that the common-law right of a husband to the personal property of his wife was changed by the act. The Court stated:
By the common law, marriage operated as an absolute gift to the husband of all the personal chattels of the wife, which were in her possession at the time. With respect to such part of her personalty as is not in her possession, as debts due to the wife, and all that class of chattels denominated choses in action, these were a qualified gift by law to the husband, on condition that he reduce them into possession during the coverture; for if he die in the lifetime of his wife without reducing such property into possession, she, and not his representatives will be entitled to it. But if he survive her, then he, as her administrator, will be entitled to all her personal estate, which continued in action or unrecovered at her death. Co.Lit. 351 a, also note, 304; Clancy, Husb. & Wife, 4; Roper, 204. These principles are very plain and familiar, and, apart from the statute, would give the slaves to the husband. (20 Miss. at 352).
The same statute was considered in Olive, Admr. v. Walton, 33 Miss. 103 (1857) where the Court stated:
In considering this question, we must look to the true spirit and object of the statute, and construe its language with reference to the policy indicated by it. Before the passage of the Act, a married woman was incapable of holding to her separate use, property conveyed directly to her, in her own name. The primary object of the statute was doubtless to remove that incapacity, and to secure to her separate use all property which she might acquire, except the same should come from her husband; and hence provision, in the first place, is made, enabling her to take by direct conveyance to her. But this is only a mode of accomplishing the end intended, the policy being to secure to the wife a complete title to all such property as might be acquired by her, to her sole and separate use, for the benefit of herself and her children. This was a new policy in our laws, founded upon enlarged views of protection and justice to the rights of a class of society entitled to the most liberal protection. It was the substantial right, which the legislature intended to secure, rather than to prescribe a form, as necessary to be complied with, in order to the enjoyment of the right; and therefore, the spirit of the statute is to secure to the benefit of the wife and her children, all property which may thereafter be conveyed to her separate use and benefit, without regard to the form of the conveyance. (33 Miss. at 114).
There are other cases construing the "woman's law" but the two cited are sufficient examples of the principle that this *264 Court received the statute into the body of the law, not only as a rule to be applied, but as a principle from which to reason, and that common law on the same subject must give way to statutes.
A more recent example of the operation of this principle of receiving a statute into the body of the law is our recognition of the right of a wife to recover for loss of consortium caused through negligent injury to her husband by a third party. In Tribble v. Gregory, 288 So.2d 13 (Miss. 1974), we stated:
For many years Mississippi held to the majority rule that a wife did not have a cause of action for loss of consortium caused through negligent injury of her husband by a third party. Nash v. Mobile & O.R. Co., 149 Miss. 823, 116 So. 100 (1928); Simpson v. Poindexter, 241 Miss. 854, 133 So.2d 286 (1961), suggestion of error overruled 241 Miss. 862, 134 So.2d 445. A husband, however, did have such a cause of action with respect to negligent injuries to his wife. Brahan v. Meridian Light & Ry. Co., 121 Miss. 269, 83 So. 467 (1919); Palmer v. Clarksdale Hospital, 213 Miss. 611, 57 So.2d 476 (1952). In 1968 Miss. Code Ann. § 93-3-1 (1972) was amended authorizing an action by a wife for loss of consortium because of negligent injuries to her husband, by adding the following sentence:
A married woman shall have a cause of action for loss of consortium through negligent injury of her husband.
This is the first case to be decided by this Court under the amendment; therefore, it is necessary to define the scope and limitation of damages recoverable in an action under the statute. (288 So.2d at 16).
Other cases involving this principle are found in our law but our treatment of the "woman's law" and the wife's right to consortium serve as sufficient examples of the principle that throughout the history of this state we have received statutes into the body of the law both as a rule to be applied and as a principle from which to reason. Dean Pound's suggestion was not innovative so far as Mississippi is concerned because we have consistently applied this principle in construing statutes in derogation of the common law.
Our Workmen's Compensation Act in its entire concept is a departure from the common law. It represents long and patient study by experts, careful consideration by conferences, discussions in periodicals and in the press, and intelligently conducted hearings before legislative committees. The result was a carefully drafted Act which substituted a no-fault compensation system to replace the common law action by employees against employers. We have repeatedly held that any construction given the Act should be sensible and liberal with the view of carrying out the purposes of the Act. We should not focus the microscope of judicial analysis on a few words in the entire Act, and in the process erode the overriding purpose of the Act. Our Act and the common law right to sue a fellow employee for negligence, as opposed to an intentional tort, cannot coexist, so the common law right to sue a fellow employee where the injured employee is covered by the Act must give way.
The final issue with which we are faced concerns the correctness of the trial court's order overruling the demurrers by Bechtel Power Corporation and The Travelers Insurance Company to the declaration which named them as defendants and which stated that pursuant to section 71-3-71 Mississippi Code Annotated (1972) they were "... required to assert such, if any, claims which they may have in the premises." In its order overruling the demurrers and motions to dismiss the declaration, the trial court gave Bechtel and The Travelers thirty days either, to intervene, or disclaim any interest in the lawsuit.
The demurrers and motions to dismiss as to Bechtel and Travelers should have been sustained. Bechtel, as the employer, was not subject to suit [section 71-3-9 Mississippi Code Annotated (1972)]; and the declaration did not state a cause of action against Travelers but only stated that Travelers was required to assert any claim which it might have.
*265 Bechtel and Travelers correctly argue that section 71-3-71 Mississippi Code Annotated (1972), which establishes the right of intervention, makes intervention optional and does not require that the right be exercised at any particular time. Cf. McDonald v. E.J. Lavino Co., 430 F.2d 1065 (5th Cir.1970); Litton Systems, Inc. v. Murphree, 301 So.2d 850 (Miss. 1974); Powe v. Jackson, 236 Miss. 11, 109 So.2d 546 (1959). Therefore, it was improper for the lower court to set a time limit of thirty days on the right of these appellants to intervene.
AFFIRMED ON APPEAL OF PLAINTIFF, MRS. HELEN L. McCLUSKEY, IN NO. 50,002; REVERSED ON APPEAL OF DEFENDANTS BECHTEL AND TRAVELERS, IN NO. 50,011, AND RENDERED.
ALL JUSTICES CONCUR.
NOTES
[1] Section 71-3-71 Mississippi Code Annotated (1972) provides in part as follows:

An employer or compensation insurer who shall have paid compensation benefits under this chapter for the injury or death of the employee shall have the right to maintain an action at law against any other party responsible for such injury or death, in the name of such injured employee or his beneficiaries, or in the name of such employer or insurer, or any or all of them.