Julian S. KIPNIS and United States Fidelity & Guaranty Company, Plaintiffs,

v.

Clarence ANTOINE, Jr., Defendant.

HORACE MANN INSURANCE COMPANY, Plaintiff,

v.

Clarence ANTOINE, Jr., Defendant.

Nos. GC 77–33–S–P, GC 78–80–S–P.

United States District Court,
N. D. Mississippi,
Greenville Division.

March 29, 1979.

Frank W. Hunger, Lake, Tindall, Hunger & Thackston, Greenville, Miss., for Horace Mann Ins. Co.

Lawrence D. Wade, Campbell & Delong, Greenville, Miss., for Julian S. Kipnis & USF&G.

John L. Walker, Walker, Brookins & Walker, Jackson, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The above-captioned actions are so interrelated that the motion for summary judgment in GC 78–80–S–P and the motion to dismiss in GC 77–33–S–P may be disposed of in this Memorandum of Decision.

On August 20, 1977, Julian S. Kipnis (hereafter "Kipnis"), plaintiff in GC 77–33–S–P, Clarence Antoine, Jr. (hereafter "Antoine"), defendant in GC 77–33–S–P, and GC 78–80–S–P, and one Robert H. Tewes (hereafter "Tewes"), were employed by the Delta Foundation, Inc., at Greenville, Mississippi (hereafter "Delta").[1]

A shooting incident occurred on the date aforesaid in the office of Fine Vines, which resulted in Kipnis being shot in the neck. The shooting was done by Antoine, who reached into the drawer of a desk at which he was seated, removed a pistol and began shooting.

As a result of his injury, Kipnis was paid benefits by the United States Fidelity and Guaranty Company (hereafter "USF&G"), pursuant to the Mississippi Workmen's

---

1. The record is not clear, but Delta Foundation, Inc., during the pertinent period, apparently was the parent corporation of Delta Sales, Fine Vines, and Delta Enterprises. Antoine held a managerial position with Fine Vines; Kipnis was the general Manager of a company created when Fine Vines and Delta Sales were merged into one company. Tewes was also engaged in a managerial position with Delta Foundation.

Compensation Law. Title 71, Chapter 3 of Mississippi Code, Miss.Code Ann., §§ 71–3–1, et seq. (1972), *as amended* (Cum.Supp. 1978).

Kipnis and USF&G filed suit against Antoine in this court on March 25, 1977, GC 77–33–S–P. They based their demand against Antoine on the theory that Antoine deliberately, intentionally and without justification, shot and wounded Kipnis while he was engaged in the performance of his duties for Delta.[2]

Kipnis and USF&G sought to recover compensatory and punitive damages in the aggregate sum of $416,542.92. USF&G demanded recoupment of the $16,542.92, which had been paid to Kipnis as workmen's compensation benefits.

On March 29, 1978, a notice was mailed informing the parties that the action was set for pretrial conference at Greenville on April 26, 1978. On April 3, 1978, Kipnis and

USF&G filed a motion to amend the complaint to set forth an additional ground for recovery on the basis of intentional, malicious and wanton negligence.[3] On April 13, 1978, Antoine filed a motion to amend his original answer to include an affirmative defense based on Mississippi's one-year statute of limitations, applicable to assault and battery actions.[4] Antoine simultaneously moved for dismissal or in the alternative for summary judgment on the ground that the action was barred by said statute.

The court entered an order on April 13, 1978, permitting the filing of the amended complaint and answer. The amended complaint was filed April 18, 1978, and the amended answer, April 25, 1978. Antoine's original answer filed May 2, 1977, consisted of a general denial of the allegations of the complaint. The amended answer, asserted an affirmative defense based upon the statute of limitations aforesaid.[5]

2. The facts alleged by Kipnis and USF&G to support their demand are contained in paragraph 2 of the complaint. There they alleged:

> On or about August 28, 1975,* while Plaintiff, Julian S. Kipnis and Defendant were employed by Delta Foundation, Inc., at Greenville, Washington County, Mississippi, and during the course and scope of the said employment, the Defendant, Clarence Antoine, Jr., maliciously and intentionally and without any legal or moral justification, shot and seriously wounded Plaintiff Julian S. Kipnis. Thereafter, Defendant, Clarence Antoine, Jr., fled the State of Mississippi.
>
> * The correct date appears from the record to be August 20, 1975.

3. The amended complaint alleges:

> 2. On or about August 28, 1975, while Plaintiff Julian S. Kipnis and Defendant were employed by Delta Foundation, Inc., at Greenville, Washington County, Mississippi, and during the course and scope of said employment, the Defendant, Clarence Antoine, Jr., maliciously and intentionally and without any legal or moral justification, shot and seriously wounded Plaintiff Julian S. Kipnis. Thereafter, Defendant Clarence Antoine, Jr. fled the State of Mississippi.
>
> 2A. Alternatively, Plaintiffs charge that on or about August 28, 1975, while Plaintiff Julian S. Kipnis and Defendant were employed by the Delta Foundation, Inc., at Greenville, Washington County, Mississippi, and during the course and scope of said employment, the Defendant, Clarence Antoine, Jr., negligently shot and seriously wounded

Plaintiff, Julian S. Kipnis, and that said negligence on the part of Clarence Antoine, Jr., was gross and wanton and tantamount to an intentional and malicious act.*

> * This paragraph was added by the Amendment.

4. Miss.Code Ann. § 15–1–35 (1972), provides:

> All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, and for libels, shall be commenced within one year next after the cause of such action accrued, and not after.

5. The grounds of the motion for summary judgment were set forth in the motion as:

> 1. That all of the pleadings on file herein, along with the deposition of Plaintiff Julian Kipnis, clearly show that the alleged assault and battery and/or maiming of Plaintiff Julian Kipnis occurred on or about August 20, 1975.
>
> 2. The complaint alleges and Plaintiff Kipnis testifies in his deposition that Defendant committed the intentional tort of assault and battery and/or maiming on August 20, 1975.
>
> 3. Section 15–1–35 of the Mississippi Code of 1972 states that all actions for assault and battery and/or maiming shall be commenced within one year after the occurrence of the same, and not thereafter.
>
> 4. Plaintiffs filed their complaint in the above styled and numbered cause on March 25, 1977. Prior to the filing of said complaint on March 25, 1977, neither Plaintiff had sought to file suit against defendant.

Antoine's amended answer places in issue the liability of USF&G to Kipnis for benefits under the Workmen's Compensation Law; also the amount paid by USF&G to Kipnis on account thereof. In this portion of the amended answer, Antoine refers to the injury suffered by Kipnis as being one of "accidental" origin.

The file in GC 77–33–S–P, reflects that on May 3, 1978, Kipnis and USF&G filed a motion to continue the trial, which had been previously docketed, on the ground that they had recently filed an amended complaint asserting alternatively that the acts charged to Antoine were committed through his gross negligence, that Antoine had in force and effect at the time of the shooting a comprehensive dwelling insurance policy purporting to provide third-party liability insurance coverage for injuries to third parties resulting from negligence on the part of Antoine and, in the opinion of counsel, it was advisable that the insurance carrier should be notified and given a reasonable opportunity to make inquiry into the facts and circumstances surrounding the case and take such action as it might deem prudent. Antoine did not object to the continuance. The file reflects that the motion was granted by the magistrate and a cut-off date of discovery fixed for July 31, 1978, looking to a trial date in September, 1978.

On August 2, 1978, Antoine filed a motion to continue the pre-trial conference fixed by the magistrate in GC 77–33–S–P, citing the filing of a complaint for declaratory judgment filed against him by his insurance carrier in GC 78–80–S–P, styled *Horace Mann Insurance Company v. Clarence Antoine, Jr.* Antoine attached a copy of the complaint in GC 78–80–S–P and a copy of his answer thereto to his motion to continue the pre-trial conference.

On October 26, 1978, this court released a Memorandum of Decision and Order sustaining Antoine's motion for summary judgment in GC 77–33–S–P, as to that "portion of plaintiffs' complaint alleging that Antoine intentionally shot plaintiff Kipnis" and dismissing such complaint.

The motion was sustained on the ground that the claim of Kipnis that Antoine intentionally shot him was time-barred by Section 15–1–35.

At the time of the shooting, Antoine had a comprehensive dwelling insurance policy with Horace Mann Insurance Company (hereafter "Horace Mann"), plaintiff in GC 78–80–S–P.

In Coverage Group C, the policy provides for Comprehensive Personal Liability Coverage. Division I of that section provides:

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

The words "an occurrence" as used in Division 1, *supra*, are defined in the policy as follows:

"occurrence" means an accident, including injurious exposure to conditions, which results, during the endorsement period, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured.

Coverage Group C contains a provision entitled "1. Insured's Duties in the Event of an Occurrence, Claim or Suit—Division I and Division II" which provides in part:

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available

witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable. The Named Insured shall promptly take at his expense all reasonable steps to prevent other bodily injury or property damage from arising out of the same or similar conditions, but such expense shall not be recoverable under this endorsement.

(b) If claim is made, or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

After receiving Antoine's notice of the incident Horace Mann filed a complaint in GC 78–80–S–P seeking a declaratory judgment that the shooting incident was not an "occurrence" within the meaning of the policy, or, in any event, the late notice of the incident worked a forfeiture of the policy. After discovery proceedings, Horace Mann filed a motion for summary judgment.

I. *The Motion to Dismiss in GC 77–33–S–P.*

The court's order of October 26, 1978, on Antoine's motion for summary judgment in GC 77–33–S–P dismissed that portion of the complaint which relied on an intentional shooting of Kipnis by Antoine. The amended complaint in GC 77–33–S–P seeks to introduce into the case the theory that Antoine's act was negligently done, which negligence Kipnis alleges was "gross and wanton and tantamount to an intentional and malicious act."[6]

The undisputed fact is that Kipnis and Antoine were co-employees of Delta Foundation, Inc., and on the occasion in question, both were acting within the scope of and in the furtherance of their duties as such employees. They were, therefore, on this occasion, covered as co-employees by the Mississippi Workmen's Compensation Law. Under such conditions, Kipnis does not have the common law right to sue his fellow employee. The court is *Erie*-bound[7] in this action. The Mississippi Supreme Court, in *McCluskey v. Thompson*, 363 So.2d 256 (1978), held:

When these rules of statutory construction are applied to the Workmen's Compensation Act in its entirety, it is apparent that the legislature did not intend to allow an employer or compensation insurer to recover compensation benefits paid by them from a fellow servant of the injured employee.

A number of other states have reached the same conclusion and construed their Workmen's Compensation Acts as a bar to a negligence action by a covered employee seeking damages for the same injuries against a coemployee. Those decisions generally hold that such suits would

---

**6.** This appears to be a play of words to place the action beyond the reach of the one-year statute of limitations, Section 15–1–35. The court is of the opinion that the allegations of negligence contained in the amended complaint have the effect of charging intentional conduct on the part of Antoine. The court's order of October 26, 1978, sustaining Antoine's motion for summary judgment provides for the dismissal of that "portion of plaintiff's complaint alleging that Antoine intentionally shot plaintiff Kipnis." The amended complaint did not act to change the nature of the suit. The court's said order, without further action, justifies the entry of a final judgment dismissing the complaint. This holding is reinforced by the rules prevailing in Mississippi that "when a party testifies to positive and definite facts, which, if true would defeat his right to recover . . . and such statements are not subsequently modified or explained by him to show that he was mistaken although testifying in good faith, he is conclusively bound by his own testimony. . . ." *Bradshaw v. Stieffel*, 230 Miss. 361, 367, 92 So.2d 565, 567 (1957); *Taylor v. Williams*, 190 So.2d 872 (Miss.1966); *Callender v. Cockrell*, 217 So.2d 643 (Miss.1969); *Gates v. Murphree*, 286 So.2d 291 (Miss.1973).

At the giving of his deposition in GC 77–33–S–P, Kipnis made it crystal clear that Antoine's act in shooting him was deliberately and intentionally done. There can be no other reasonable interpretation of his deposition testimony. See Kipnis deposition, pages 12–14; 19–20; 55–56. It is well to note in this connection that the court may consider this deposition as if taken in both actions, GC 77–33–S–P and GC 78–80–S–P. *See 8 C. Wright & A. Miller, Federal Practice and Procedure*, § 2150 at 467–70 (1970).

**7.** *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

destroy the purposes of workmen's compensation.

363 So.2d at 259.

The *McCluskey* court went on to hold: Our Act and the common law right to sue a fellow employee for negligence, as opposed to an intentional tort, cannot coexist, so the common law right to sue a fellow employee where the injured employee is covered by the Act must give way.

363 So.2d at 264.

▆ Kipnis and USF&G seek to avoid the impact on their action against Antoine created by *McCluskey* by arguing that the *McCluskey* court made an exception to the rule where the fellow employee's act constituted an intentional tort. The exception of an "intentional tort" does not save their right of action for, as the court has already held, under such circumstances the claim is time-barred. They argue, however, that this court should write into the rule another exception that is where the fellow employee is guilty of gross or wanton negligence. The court is unimpressed with the argument and declines to enlarge upon the exception. This is an issue that the Mississippi Supreme Court will have to decide. As the rule now stands only "intentional torts" are excepted from the rule.

The court concludes that Antoine's motion is well taken and should be sustained, and the amended complaint dismissed on the merits at the costs of Kipnis and USF&G.

## II. *The Motion for Summary Judgment of Horace Mann.*

The only ground that the court finds necessary to consider on Horace Mann's motion for summary judgment is the contention that the incident of the shooting does not come within the coverage of the policy, and, thus, Horace Mann has no liability thereunder to Antoine.

Was the shooting an intentional act, or an accident? If the facts place this question in dispute, a summary judgment is not proper. The policy insures against an occurrence, which is "an accident, . . . which results during the endorsement period, in bodily injury or property damage *neither expected* or *intended from the standpoint of the insured*". (Emphasis added).

Kipnis, Antoine and Tewes were the only persons in the office when the shooting occurred. Kipnis, the victim, and Tewes, make it completely clear that the shooting was not an accident, but an intentional act on the part of Antoine. See Kipnis' deposition at pages cited in footnote 6, *supra*, and Tewes deposition taken in GC 78–80–S–P, pages 5–8.

Antoine has presented a report by a psychiatrist, who examined him a week after the shooting which states that Antoine was psychotic and suffering from an acute paranoid episode at the time. The report does not state an opinion that Antoine did not have the mental capacity to understand the nature of his acts, or that he was mentally incompetent of forming an "intent" to commit the act.

Antoine states in an answer to a request for admission by Horace Mann, that on the occasion in question, after informing Kipnis and Tewes that he was resigning and discussing their problems, he reached in the drawer of the desk in order to obtain a pen to write a resignation, when he saw a pistol laying in the drawer; that upon seeing the pistol, he picked it up and fired it at random in order to relieve himself of pressure, frustration and anxieties that he had been experiencing as the result of his problems of employment; that after firing the pistol several times he got up out of his chair walked from behind the desk and out of the room; that as he left the room he saw Kipnis laying on the floor, but he did not see any bullets strike him.

Was the shooting of Kipnis "neither expected nor intended" from the standpoint of Antoine? If Antoine intended to shoot Kipnis, he has no coverage under the policy. If he could reasonably have expected that Kipnis would be wounded by random shooting to relieve his frustration, Antoine has no coverage.

The question confronting the court on this issue is whether reasonable men could arrive at the conclusion that Antoine did not intend or expect to wound Kipnis. If reasonable men could arrive at such a conclusion, there exist an issue for the trier of the facts, and summary judgment is not proper. On the other hand, if reasonable men could not reach such a conclusion, a summary judgment should be granted. *Boeing Company v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969); 10 C. Wright & A. Miller, Federal Practice & Procedure § 2738 at 703–04 (1973).

■ The court has reached the conclusion that the circumstances surrounding the conference of Kipnis, Tewes and Antoine, the reasons for arranging the same, the almost uncontradicted evidence as to what occurred in the office during the conference, and the conduct of the parties thereafter, leave no reasonable conclusion other than Antoine called Kipnis into the office to shoot him. Antoine's version of the matter is so unreasonable no reasonable jury could accept it. At a trial where such testimony might be presented the judge would be compelled to direct a verdict for the movant. Under such circumstances Horace Mann is entitled to summary judgment and to a judicial determination that the policy of insurance held by Antoine did not cover the incident, and Horace Mann has no liability of any nature to Antoine or any other party on account thereof.

### SUMMARY

The court will enter an order sustaining Antoine's motions for summary judgment and motion to dismiss in GC 77–33–S–P and directing the clerk to enter final judgment in his favor; dismissing the amended complaint, filed Nov. 3, 1977.

The court requests counsel for Horace Mann to present an appropriate declaratory judgment for the court to enter in GC 78–80–S–P.