ECONOMY FIRE & CASUALTY CO., Plaintiff-Appellee,

v.

Norma Jane BEEMAN and William A. Beeman, Defendants-Appellants.

No. 80–2066.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1981.

Decided Aug. 10, 1981.

Robert C. Rupp, Stewart, Gilliom, Fuller & Meyer, Indianapolis, Ind., for defendants-appellants.

William M. Olah, Terre Haute, Ind., for plaintiff-appellee.

Before FAIRCHILD and PELL, Circuit Judges, and CRABB,* Chief District Judge.

PELL, Circuit Judge.

The defendants in this diversity suit [1] appeal from the district court's declaratory judgment in favor of the plaintiff, Economy Fire & Casualty Company (Economy). The court ruled that Economy was not liable to the defendants under the homeowner's policy of its insured, George Adams.

The defendant-appellant, Norma Jane Beeman (Beeman), was on duty as a counter waitress at a Dairy Queen store in Sullivan, Indiana on September 26, 1975. The defendants concede that George Adams (Adams) was summoned to the store on that day to perform electrical repair services. Although the exact circumstances are less than clear, it appears that Adams in some fashion lifted or moved Beeman aside allegedly to gain access to an electrical appliance situated behind the spot in which Beeman was standing. As a result of this contact, Beeman alleged that she sustained injuries to her back, hips, and leg. Beeman and her husband, William Beeman, codefendant in the instant action, sued Adams in state court.

George Adams was insured by Economy at the time of the incident under a homeowner's policy which provided personal liability coverage for bodily injury, but excluded coverage for injuries "arising out of business pursuits of any Insured except activities therein which are ordinarily incident to non-business pursuits." Economy instituted the present lawsuit against the Beemans, George Adams and his wife to determine its liability under the policy.

At trial, the defendants contended that Adams' activity of attempting to repair a machine was not a business pursuit and therefore not within the business pursuits exclusion of the policy. Alternatively, they argued that even if Adams' activity did constitute a business pursuit, his particular act of lifting or moving Beeman nonetheless was an activity ordinarily incident to nonbusiness pursuits, thus within the exception to the business pursuits exclusion.

The trial court found that Adams came to the store on September 26, 1975 to investigate an electrical problem, and that this activity constituted a business pursuit. The court further found that Economy was not liable under the policy because Adams

---

* Barbara B. Crabb, Chief Judge of the Western District of Wisconsin, is sitting by designation.

1. The parties agree that the law of Indiana applies in this case.

moved or lifted Beeman while searching for the electrical problem. On appeal, the defendants do not contest that Adams' repair work at the Dairy Queen store constituted a business pursuit. They contend only that the court erred in finding that Adams' contact with Beeman was incidental to his business activities.

Exclusionary clauses for business pursuits in homeowners' policies have spawned frequent litigation over the precise issue disputed here—whether a particular momentary act occurring within an overall business context is incident to the business pursuit, or ordinarily incident to a nonbusiness pursuit. The defendants contend that the question is properly analyzed by inquiring whether or not the activity occurring at the precise moment of injury was *necessary* to the business pursuit. They argue that "[l]ifting or moving Mrs. Beeman, under the facts of this case, have to be acts incidental to a non-business pursuit because it was not necessary to lift or move Mrs. Beeman and the act was not justified in any way." Adams' physical contact with Beeman may indeed have been unnecessary.[2] No doubt the more polite and businesslike approach would have been for Adams to request Beeman to move.

Unless we adopt the position that Adams' role as an electrician ceased the moment he acted discourteously, inefficiently, or in a negligent fashion, however, we cannot accept the defendants' definition of business pursuits to include only those activities strictly necessary to the business activity. To the contrary, numerous cases have held activities resulting in injury to be incident to business pursuits even though the actions in question were not strictly necessary, and in most events were counterproductive, to carrying out the business activities. *See, e. g., Stanley v. American Fire & Casualty Co.,* 361 So.2d 1030 (Ala.1978) (no coverage where child fell into babysitter's fireplace because injury arose from negligent supervision which was a business pursuit); *Neil*

*v. Celina Mutual Insurance Co.,* 522 S.W.2d 179, 181 (Ky.App.1975) (accidental discharge of pistol which fell from the insured gasoline station operator's pocket while settling an account for gasoline purchased by an off-duty employee, the decedent, was a business pursuit even though the incident occurred after hours and after the decedent had received his wages because "the collection of the money was a business pursuit of . . . the insured"); *Pitre v. Pennsylvania Millers Mutual Insurance Co.,* 236 So.2d 920 (La.App.1970) (insured's activation of an augur without determining the location of his fellow employee, who thereby lost an arm, was not covered by homeowner's policy); *Berry v. Aetna Casualty & Surety Co.,* 221 So.2d 272 (La.App.1969) (no coverage for fellow employee's injury caused by insured's negligent operation of a forklift truck); *Dieckman v. Moran,* 414 S.W.2d 320 (Mo.1967) (no coverage where insured's activation of power brake on sheet metal machine injured fellow employee); *North River Insurance Co. v. Poos,* 553 S.W.2d 500 (Mo.App.1977) (insurer not liable to child bitten by wolf kept by insured since insured was obligated, as an employee of the Wild Canid Survival & Research Center, to keep and maintain the wolf at his residence); *Martinelli v. Security Insurance Co.,* 490 S.W.2d 427 (Mo.App.1972) (no coverage when insured employee, in going to pick up an item related to his work on his employer's premises, collided with a fellow employee); *Wiley v. Travelers Insurance Co.,* 534 P.2d 1293 (Okl.1974) (no coverage for dog bite where insured raised, bred, and sold puppies at her residence and person bitten was a customer who visited the insured in response to an advertisement); *Davis v. Frederick's, Inc.,* 30 Utah 2d 321, 517 P.2d 1014 (1973) (no homeowner's policy coverage where the insured, a restaurant employee, knocked the plaintiff to the ground as he swung open a door while departing the restaurant).

In support of the contrary position, the defendants cite *Gulf Insurance Co. v. Tilley,*

---

2. No party has contended that an emergency situation existed which would reasonably have

necessitated such immediate action.

393 F.2d 119 (7th Cir. 1968), in which this court affirmed an Indiana district court's finding that although babysitting might be a business pursuit, the babysitter's act of making coffee for herself and a guest was incident to a nonbusiness pursuit. Therefore, the exception to the business exclusion clause applied and the insurer was liable to compensate for injuries sustained by a baby who upset the coffee pot by pulling on the percolator cord. Beeman also relies upon *Michigan Mutual Liability Co. v. Ferguson*, 15 Mich.App. 298, 166 N.W.2d 525 (1968), in which the insured was removing snow from the roof of his business premises. When the shovel broke, he threw it off of the roof. The shovel struck a power line thereby causing damage to another building and some automobiles. The court affirmed the trial court's ruling that the insured's act of throwing the shovel was ordinarily incident to a nonbusiness pursuit. In *Morrill v. Gallagher*, 370 Mich. 578, 122 N.W.2d 687 (1963), the Michigan Supreme Court approved a judgment finding the insured's act of throwing a cherry bomb into a room where a fellow employee was working to be a prank not ordinarily incident to a business pursuit. Finally, in *State Farm Fire & Casualty Co. v. National Union Fire Insurance Co.*, 87 Ill.App.2d 15, 230 N.E.2d 513 (1967), the insured elevator repairer's impulsive horseplay, striking a rubber mallet against a fire door behind the head of another worker, was held to be incident to a nonbusiness purpose.

The defendant's acceptance of the trial court's finding of fact that "while searching for the ... electrical problems, George Adams either lifted or moved aside Norma Jane Beeman" concedes a theory they had advanced at trial, *i. e.*, that Adams was momentarily engaging in horseplay and was not seeking to move Beeman to further any business-related purpose. This case is therefore unlike *Morrill v. Gallagher, supra,* and *State Farm v. National Union, supra.* The other two cases relied upon by the defendants, *Gulf Insurance v. Tilley, supra,* and *Michigan Mutual v. Ferguson, supra,*

are factually closer to the case at bar than either *Morrill* or *State Farm.* But, in all four cases, the reviewing court was merely affirming findings originally entered by the trial court which does not imply that the result obtained was the *only* conclusion reasonably possible. Indeed the court in *State Farm* recognized that the interpretation chosen by the trial court in that case was not necessarily the only reasonable application. The court supported a finding of liability in part by noting that "[t]he incident under consideration occurred during a business pursuit, and it is at least as logical to conclude that the defendant's impulsive action, which caused the injury, was the type ordinarily incident to a non-business pursuit, as it would be to reach an opposite determination." 87 Ill.App.2d at 20, 230 N.E.2d at 516. Similarly in this case, we are bound by the trial court's finding that Adams' action occurred while searching for the electrical problem, which finding implicitly rejected any possibility of mere horseplay, unless that finding is clearly erroneous. Fed.R.Civ.P. 52(a); *Milwaukee Mutual Insurance Co. v. City of Minneapolis*, 307 Minn. 301, 239 N.W.2d 472 (1976) (finding that business pursuits exclusion did not apply affirmed in a case involving an accidental shooting at police station between police officers just before they went on duty because "[t]he lower court's factual determination as to the nature of the activities giving rise to the injuries was not clearly erroneous and therefore will not be set aside...."). Having reviewed the record in this case, we cannot say that the district court's findings were clearly erroneous[3] particularly where, as here, they resulted in part from the judge's determination of the credibility of conflicting testimony.

The defendants seek to distinguish the cases Economy relies upon by pointing out that most involved unintentional contacts whereas Adams deliberately moved Beeman—he did not accidentally bump into her. While the defendants' characterization of the cases may be valid, the inten-

---

**3.** In reaching this conclusion we reject as without merit the defendants' contention that Economy has not met its burden of proving that the business pursuits exclusion applies.

tional/accidental dichotomy appears to be a distinction without a difference. The defendants' argument that Adams was not merely negligent, but "was guilty of the criminal conduct of assault and battery," does not advance their position. To the extent that Adams may have intended, or should have expected, his actions to injure Beeman, coverage would be excluded by the policy exception for bodily injury "either expected or intended from the standpoint of the Insured." [4] *See, e. g., Home Insurance Co. v. Neilsen,* 165 Ind.App. 445, 332 N.E.2d 240 (1975) (court denied coverage for assault where homeowner's policy excluded injuries intentionally caused by the insured, and reasoned that "intent may be established either by showing an actual intent to injure, or by showing . . . the act to be such that intent to cause harm . . . must be inferred as a matter of law"); *Kipnis v. Antoine,* 472 F.Supp. 215, 220–21 (N.D.Miss. 1979) (insured who intentionally shot fellow employee not covered by homeowner's policy providing coverage only for injuries neither expected nor intended by the insured). Conversely, if Adams neither intended nor reasonably should have expected his action to injure Beeman, we see no reason to adopt the distinction the defendants urge regardless of whether or not any technical assault may have occurred under Indiana law as they contend. The defendants have cited no cases which support the distinction. The business pursuits exclusion clause does not differentiate between intentional and accidental contact. Adams' act of lifting or moving Beeman, albeit perhaps a rude activity, occurred while in pursuit of a business purpose, and specifically, to facilitate his business objective.

The appellants assert that the trial court ignored the insurance law principle that in the event of an ambiguity, exclusionary clauses will be construed against the insurer. While some courts regard the exclusionary clause at issue to be ambiguous, *see, e. g., State Farm Fire & Casualty Co. v. National Union Fire Insurance Co.,* 87 Ill. App.2d 15, 20, 230 N.E.2d 513, 516 (1967), others hold that, although perhaps poorly worded, the import of the clause is clear at least as applied to the particular facts of those cases. *See, e. g., Stanley v. American Fire & Casualty Co.,* 361 So.2d 1030, 1033 (Ala.1978); *Crane v. State Farm Fire & Casualty Co.,* 5 Cal.3d 112, 95 Cal.Rptr. 513, 515, 485 P.2d 1129, 1131 (Cal.1971) (*en banc*); *McDougall v. Hartford Fire Insurance Co.,* 94 Idaho 220, 485 P.2d 962, 964 (1971); *Dieckman v. Moran,* 414 S.W.2d 320, 321–22 (Mo.1967); *Martinelli v. Security Insurance Co.,* 490 S.W.2d 427, 430 (Mo.App. 1972). The parties do not cite, nor has this court found, any Indiana cases determining whether or not such an exclusionary clause is amphibolous. In *Gulf Insurance Co. v. Tilley,* 280 F.Supp. 60, 64–65 (N.D.Ind.1967), *aff'd* 393 F.2d 119 (7th Cir. 1968), however, an Indiana federal court sitting in a diversity suit recognized that ambiguous insurance policy terms should be strictly construed against the insurer, and concluded that an exclusionary clause identical to the one in the case at bar was ambiguous.

Even assuming *arguendo* that Indiana courts would find this exclusionary clause to be ambiguous, the district court's findings are nevertheless not clearly erroneous. It is the appellant's burden to establish affirmatively error on appeal. In this case, the defendants suggest that the court ignored the principle they urge, but they point to nothing in the record to support their contention. They argued that the clause should be construed against the insurer in their trial brief. Thus, their theory was brought to the district judge's atten-

---

**4.** The district court made no finding with respect to the possible tortious character of Adams' contact. We assume, for purposes of Economy's liability in this action, that the injury was neither intended nor expected by Adams. Otherwise, the issue of Economy's liability under the business pursuits exclusion would be moot due to the "intended or expected" exclusion. In view of these particular facts, therefore, we need not decide the defendants' hypothetical of whether a particular activity carried out to further a business objective, but which an insured intends or should expect to cause injury—e. g., if Adams had intentionally shot Beeman to gain access to the machine— would be ordinarily incident to a business pursuit for purposes of the business pursuits exclusion.

tion. The court's opinion contains no rejection of the defendants' contention that a liberal construction of the clause is appropriate. Nor are the court's findings necessarily inconsistent with an interpretation which would construe the exclusions clause most strongly against the insurer on this set of facts.

The appellate court cannot try the case de novo. Moreover, in reviewing the district court's findings of fact, we must view the evidence in the light most favorable to the appellee. *Aunt Mid, Inc. v. Fjell-Oranje Lines*, 458 F.2d 712, 718–19 (7th Cir.), *cert. denied*, 409 U.S. 877, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972). In this case, there is substantial evidence to support the district court's findings and we cannot say that they are clearly erroneous.

For the foregoing reasons, the judgment of the district court is affirmed.